FILED
2025 Jan-17  AM 11:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

# JEFFERSON COUNTY COMMISSION
## (Commission Chambers)

STATE OF ALABAMA)
JEFFERSON COUNTY)
The Jefferson County Commission met for work sessions on Tuesday, November 2, 2021, at the Jefferson County Courthouse, Commission Conference Room #200.  Commission President James A. Stephens, presiding.
Those members present were as follows:

District 1 - Lashunda Scales, President Pro-Tempore         Arrived at 9:14 AM
District 2 - Sheila Tyson
District 3 - James A. Stephens, President
District 4 - Joe Knight
District 5 - Steve Ammons

The work sessions (Pre-Commission Committee Meetings) were convened at 9:09 AM on Tuesday, November 2, 2021, and the Commission received a preliminary agenda and supporting documentation for the County Commission meeting to be held on Thursday, November 4, 2021.

The Commission reviewed the preliminary agenda and moved the items to the Commission Agenda, determining the order for consideration at the Commission meeting.
     There being no further business, the work session was adjourned at 9:32 AM.

---

STATE OF ALABAMA)
JEFFERSON COUNTY) November 4, 2021
The Commission Re-convened in Commission Meeting at the Commission Chambers Birmingham, Alabama at 9:09 AM, Jimmie Stephens, Presiding and the following members present:

District 1 - Lashunda Scales, President Pro-Tempore
District 2 - Sheila Tyson
District 3 - James A. Stephens, President
District 4 - Joe Knight
District 5 - Steve Ammons

Invocation was led by Brother Mitch Grissett, Senior Pastor for Cannon Baptist Church, Morgan Road, Bessemer, Alabama

Pledge of Allegiance was led by Cal Markert, County Manager

---

Commission Meeting Minutes dated October 21, 2021

Motion was made by Commissioner Steve Ammons and seconded by Commissioner Sheila Tyson that the Commission Minutes dated October 21, 2021, to dispensed with the reading and to Approve and Accept as presented.
**AYES:** Joe Knight, Jimmie Stephens, Sheila Tyson, Lashunda Scales; **ABSTAIN:** Steve Ammons;

Certificate of Recognition
Alabama Heat Athlete

Purpose Henderson-Legacy Prep School
Hayden Yerby-Jasper High School
Ryan Tafoya-Tarrant Elementary School
Zayria Jackson-Rudd Middle School
Braelyn Lacy-Trace Crossings Elementary School
Ross Christy-Bragg Middle School
Gideon-Princeton School



DEFENSE TRIAL EXHIBIT
**DX09**

Caleb Newton-Princeton School

A Public Hearing was held to receive comments and concerns from citizens regarding the adoption of the redistricting lines of the new Commission Districts. Members of the public speaking in regards to the matter were:

David Russell, Birmingham, Alabama 35243.

George McCall, 2805 Avenue E Apartment 3, Birmingham, Alabama 35209

Pastor Tyree Anderson, current resident of Hoover, Alabama

Bryan Rice, 602 19th Street Ensley, Alabama

Alice Westry, Birmingham, Alabama

Johnny Gunn, Bellview Heights Community and President of the Neighborhood Association

There being no further comments from the public, the public hearing was closed, and the following action taken:

Motion was made by Commissioner Steve Ammons to Adopt Plan 1 - Re-Districting as presented, and seconded by Commissioner Shelia Tyson. Voting "Aye" Ammons, Knight, Tyson, and Stephens. Voting "Nay" Scales. Motion passes 4/1.

2021-929
## RESOLUTION

**WHEREAS,** in accordance with Section 11-3-1.1, Code of Alabama (1975), the Jefferson County Commission will conduct a public hearing to consider a resolution altering the boundaries of its single member districts during the regular meeting of said Commission at 9:00 AM, On November 4, 2021.

**NOW THEREFORE BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION as follows:**

1. The County Manager shall publish a notice of date, time, and place of said Public Hearing in a newspaper of general circulation in Jefferson County for at least two weeks prior to November 4, 2021.

2. Said notice shall state that a map indicating the proposed new district boundaries will be available for public inspection for at least two weeks prior to November 4, 2021, at the Office of Board of Registrars at Room A-410, Jefferson County Courthouse, 716 Richard Arrington Jr. Blvd. North, Birmingham, Al. 35203.

## RESOLUTION

WHEREAS, the Jefferson County Commission is comprised of five Commissioners elected from single member districts; and,

WHEREAS, Section 11-3-1.1, Code of Alabama (1975), authorizes the Jefferson County Commission, to alter, by resolution, the boundaries of its single member districts following the release of a federal decennial census; and,

WHEREAS, the 2020 federal decennial census has been released and said census reflects that population shifts have occurred with Jefferson County which make the alteration of the boundaries of the single member districts appropriate and desirable; and,

WHEREAS, in accordance with Section 11-3-1.1, Code of Alabama (1975), and advertisement was published in the Birmingham News, a paper of general circulation in Jefferson County, for at least two consecutive weeks beginning November 4, 2021, stating that the Jefferson County Commission would consider for adoption at the Regular Scheduled Commission meeting on November 4, 2021, at 9:00 AM, at the Jefferson County Commission Chambers, Room 270, Jefferson County Courthouse, Birmingham, Al., 35203, a resolution to alter the boundaries of its single member districts and further stating that a map indicating the proposed district boundaries are available for inspection

at the Office of the Jefferson County Board of Registrars, Room A-410, 716 Richard Arrington Jr. Blvd. North, Birmingham, Alabama, 35203; and,

WHEREAS, at said Commission meeting the Commission heard from all interested parties desiring to be heard on this matter.

NOW THEREFORE BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that, in accordance with Section 11-3-1.1, Code of Alabama (1975), a certified copy of this resolution, together with a map of the County showing the boundaries of the altered districts shall be filed with the Jefferson County Judge of Probate.

Motion was made by Commissioner Steve Ammons and seconded by Commissioner Sheila Tyson that the Resolution be Approved. **AYES:** Joe Knight, Jimmie Stephens, Steve Ammons, Sheila Tyson; **NAYS:** Lashunda Scales;

Commission President James A. Stephens, called for a vote on resolutions 1 through 49, with the exception of item #44 which will be Carried-Over and heard on November 18, 2021 (to give the Department of Developmental Services an opportunity to send out notices to all surrounding citizens). Motion was made to Approve and Adopt the items 1 through 49, with the exception of Item #44, on the agenda as presented by Commissioner Lashunda Scales, and seconded by Commissioner Shelia Tyson, that the resolutions, be adopted and approved as presented. Voting "Aye" Ammons, Knight, Scales, Tyson, and Stephens. Motion Carries 5/0.

2021-930
RESOLUTION

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the President be hereby authorized to execute a Community Grant Program Agreement between Jefferson County, Alabama, and the Penny Foundation in the amount of $5,000.00, for its for Music In Schools Program.

STATE OF ALABAMA      )
COUNTY OF JEFFERSON )

### COMMUNITY GRANT PROGRAM

WHEREAS, the Jefferson County Commission adopted a Community Grant Program and Funding Guidelines ("Program"); and

WHEREAS, under this Program, the Penny Foundation Inc., ("Penny Foundation"), applied for a grant of funds for $5,000.00; and

WHEREAS, the Penny Foundation, a 501(c)(3) organization, which connects people, organizations and resources through technology and innovation, seeks funding to continue community chest work to eliminate economic inequality via educational programs and grants in black communities in Jefferson County; and

WHEREAS, the Penny Foundation meets the eligibility requirements of the Program; and

WHEREAS, Commissioner Lashunda Scales has recommended funding of $5,000.00 to Penny Foundation, and the grant of such funds serves a good and sufficient public purpose; and

WHEREAS, the County Commission has determined that it is in the public interest to provide public funds to assist in the development and promotion of said County resources.

NOW THEREFORE, the parties agree as follows:

1.    The term of this Agreement shall begin upon execution hereof and end on November 2, 2022.

2.    The County shall pay to Penny Foundation a lump sum payment of $5,000.00 upon execution of this agreement.

3.    The Penny Foundation shall use the public funding to continue community chest work to eliminate economic inequality via educational programs and grants in black communities in Jefferson County.

ANY PASS-THROUGH FOR OTHER USES OR PURPOSES IS PROHIBITED.

4.    The Penny Foundation shall deliver to the Jefferson County Finance Department with a copy to the Jefferson County Manager and to the Office of Commissioner Scales a detailed report describing the use of the funds

and program benefits no later than sixty (60) days following the expenditures or by November 2, 2022, whichever shall occur first.

5.    The Penny Foundation shall create, collect and retain for inspection and copying by the County or its authorized agent or any examiner from the State Department of Public Accounts, all appropriate financial records, including original invoices, canceled checks, cash receipts and all other supporting documents, as may be necessary to prove receipt of said sum from the County and all expenditures thereof.  All such financial records and supporting documents shall be retained and made available by the Penny Foundation for a period of not less than three (3) years from termination of the fiscal year set out above.

6.    The Penny Foundation representative signed below, certifies by the execution of this agreement that no part of the funds paid by the County pursuant to the community grant shall be passed-through to another entity or individual that is not specifically identified or described in the scope of work of this agreement.

7.    The Penny Foundation  representative signed below, certifies by the execution of this agreement that no part of the funds paid by the County pursuant to this agreement nor any part of services, products, or any item or thing of value whatsoever purchased or acquired with said funds shall be paid to, used by, or used in any way whatsoever for the personal benefit of any member or employee of any government whatsoever or family member of any of them, including federal, state, county, and municipal and any agency or subsidiary of any such government; and further certifies that neither the Penny Foundation  nor any of its officers, partners, owners, agents, representatives, employees or parties in interest in any way colluded, conspired, or connived with any member of the governing body or employee of the governing body of the County or any other public official or public employee, in any manner whatsoever, to secure or obtain this agreement and further certifies that, except as expressly set out in the above, no promise or commitment of any nature whatsoever of any thing of value whatsoever has been made or communicated to any such governing body member or employee or official as inducement or consideration for this agreement.

8.    Acknowledgement of Funding: If any public recognition is made related to the purpose for which the grant was received, such as in media announcements, marketing materials, advertising, or informational campaigns, grant recipients must acknowledge support from the Jefferson County Commission as a body and not solely the sponsoring Commissioner. Jefferson County should be tagged in all social media mentions regarding County-funded projects and awards.

9.    Any violation of this certification shall constitute a breach and default of this agreement which shall be cause for termination.   Upon such termination the Penny Foundation shall immediately refund to the County all amounts paid by the County pursuant to this Agreement.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals or caused this agreement to be executed by their duly authorized representatives on the dates reflected below.

JEFFERSON COUNTY, ALABAMA

_____                    _____
Date                                                            James A. Stephens, President
                                                            Jefferson County Commission

                                                            PENNY FOUNDATION INC.

_____                    _____
Date                                                            Its:

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved.  **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-931
RESOLUTION

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that upon review and determination by the Environmental Services Department that a Sanitary Sewer, Barton Laboratory and/or Sewer Impact customer is

owed a refund due to an overpayment or incorrect payment on an account, the County Manager is authorized to direct

the Finance Department to issue a refund in the amount of the overpayment or incorrect payment in an amount not to

exceed One Thousand Five Hundred Dollars ($1,500).

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the
Resolution be Approved.  **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-932
**RESOLUTION**

**BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION** that the Commission President be

hereby authorized to execute a Community Grant Program Agreement between Jefferson County, Alabama, and

Titusville Development Corporation for a total amount of $1,800.00, to assist with its historical sign marker project to

benefit the Titusville community.

STATE OF ALABAMA      )
COUNTY OF JEFFERSON )

**COMMUNITY GRANT PROGRAM**

WHEREAS, the Jefferson County Commission adopted a Community Grant Program and Funding Guidelines

("Program"); and

WHEREAS, under this Program, Titusville Development Corporation, ("TDC"), applied for a grant of funds for

$1,800.00; and

WHEREAS, TDC is a 501(c)(3), non-profit organization, seeking funds to purchase and install county and state

markers that honor the history of Birmingham's Memorial Park; and

WHEREAS, TDC meets the eligibility requirements of the Program; and

WHEREAS, Commissioner Shelia Tyson has recommended funding of $1,800.00 to TDC, and the grant of such

funds serves a good and sufficient public purpose; and

WHEREAS, the County Commission has determined that it is in the public interest to provide public funds to

assist in the development and promotion of said County resources.

NOW THEREFORE, the parties agree as follows:

1.      The term of this Agreement shall begin upon execution hereof and end on

October 19, 2022.

2.      The County shall pay to TDC a lump sum payment of $1,800.00 upon execution of this agreement.

3.      TDC shall use the public funds to purchase and install county and state markers that honor the history of

Birmingham's Memorial Park.

ANY PASS-THROUGH FOR OTHER USES OR PURPOSES IS PROHIBITED.

4.      TDC shall deliver to the Jefferson County Finance Department with a copy to the Jefferson County

Manager and to the Office of Commissioner Tyson a detailed report describing the use of the funds and program

benefits no later than sixty (60) days following the expenditures or by October 19, 2022, whichever shall occur first.

5.      TDC shall create, collect and retain for inspection and copying by the County or its authorized agent or

any examiner from the State Department of Public Accounts, all appropriate financial records, including original

invoices, canceled checks, cash receipts and all other supporting documents, as may be necessary to prove receipt of

said sum from the County and all expenditures thereof.  All such financial records and supporting documents shall be

retained and made available by TDC for a period of not less than three (3) years from termination of the fiscal year set

out above.

6.      The TDC representative signed below, certifies by the execution of this agreement that no part of the

funds paid by the County pursuant to the community grant shall be passed-through to another entity or individual that is not specifically identified or described in the scope of work of this agreement.

7.      The TDC  representative signed below, certifies by the execution of this agreement that no part of the funds paid by the County pursuant to this agreement nor any part of services, products, or any item or thing of value whatsoever purchased or acquired with said funds shall be paid to, used by, or used in any way whatsoever for the personal benefit of any member or employee of any government whatsoever or family member of any of them, including federal, state, county, and municipal and any agency or subsidiary of any such government; and further certifies that neither TDC  nor any of its officers, partners, owners, agents, representatives, employees or parties in interest in any way colluded, conspired, or connived with any member of the governing body or employee of the governing body of the County or any other public official or public employee, in any manner whatsoever, to secure or obtain this agreement and further certifies that, except as expressly set out in the above, no promise or commitment of any nature whatsoever of any thing of value whatsoever has been made or communicated to any such governing body member or employee or official as inducement or consideration for this agreement.

8.      Acknowledgement of Funding: If any public recognition is made related to the purpose for which the grant was received, such as in media announcements, marketing materials, advertising, or informational campaigns, grant recipients must acknowledge support from the Jefferson County Commission as a body and not solely the sponsoring Commissioner. Jefferson County should be tagged in all social media mentions regarding County-funded projects and awards.

9.      Any violation of this certification shall constitute a breach and default of this agreement which shall be cause for termination.   Upon such termination TDC shall immediately refund to the County all amounts paid by the County pursuant to this Agreement.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals or caused this agreement to be executed by their duly authorized representatives on the dates reflected below.

JEFFERSON COUNTY, ALABAMA

_____          _____
Date                                            James A. Stephens, President
                                                Jefferson County Commission

                                                TITUSVILLE  DEVELOPMENT
                                                CORPORATION

_____          _____
Date                                            Ronald Bayles, Executive Director

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-933
**RESOLUTION**


**BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION** that the Commission President be

hereby authorized to execute a Community Grant Program Agreement between Jefferson County, Alabama, and

Khairi and Little Angels' Memorial for a total amount of $1,000.00, to benefit the residents of Jefferson County.

STATE OF ALABAMA      )
COUNTY OF JEFFERSON )              **COMMUNITY GRANT PROGRAM**

WHEREAS, the Jefferson County Commission adopted a Community Grant Program and Funding Guidelines ("Program"); and
WHEREAS, under this Program, Khairi and Little Angels Memorial, ("K.L.A. Memorial"), applied for a grant of funds for $1,000.00; and
WHEREAS, K.L.A. Memorial is a 501(c)(3) organization, seeking funding to provide awareness and education

for infant mortality, prenatal care and childbirth; and

WHEREAS, K.L.A. Memorial meets the eligibility requirements of the Program; and

WHEREAS, Commissioner Shelia Tyson has recommended funding of $1,000.00 to the K.L.A. Memorial, and the grant of such funds serves a good and sufficient public purpose; and

WHEREAS, the County Commission has determined that it is in the public interest to provide public funds to assist in the development and promotion of said County resources.

NOW THEREFORE, the parties agree as follows:

1.      The term of this Agreement shall begin upon execution hereof and end on October 21, 2022.

2.      The County shall pay to K.L.A. Memorial a lump sum payment of $1,000.00 upon execution of this agreement.

3.      K.L.A. Memorial shall use the public funds to provide awareness and education for infant mortality, prenatal care and childbirth.

ANY PASS-THROUGH FOR OTHER USES OR PURPOSES IS PROHIBITED.

4.      K.L.A. Memorial shall deliver to the Jefferson County Finance Department with a copy to the Jefferson County Manager and to the Office of Commissioner Tyson a detailed report describing the use of the funds and program benefits no later than sixty (60) days following the expenditures or by October 21, 2022, whichever shall occur first.

5.      K.L.A. Memorial shall create, collect and retain for inspection and copying by the County or its authorized agent or any examiner from the State Department of Public Accounts, all appropriate financial records, including original invoices, canceled checks, cash receipts and all other supporting documents, as may be necessary to prove receipt of said sum from the County and all expenditures thereof.  All such financial records and supporting documents shall be retained and made available by K.L.A. Memorial for a period of not less than three (3) years from termination of the fiscal year set out above.

6.      K.L.A. Memorial representative signed below, certifies by the execution of this agreement that no part of the funds paid by the County pursuant to the community grant shall be passed-through to another entity or individual that is not specifically identified or described in the scope of work of this agreement.

7.      K.L.A. Memorial representative signed below, certifies by the execution of this agreement that no part of the funds paid by the County pursuant to this agreement nor any part of services, products, or any item or thing of value whatsoever purchased or acquired with said funds shall be paid to, used by, or used in any way whatsoever for the personal benefit of any member or employee of any government whatsoever or family member of any of them, including federal, state, county, and municipal and any agency or subsidiary of any such government; and further certifies that neither K.L.A. Memorial nor any of its officers, partners, owners, agents, representatives, employees or parties in interest in any way colluded, conspired, or connived with any member of the governing body or employee of the governing body of the County or any other public official or public employee, in any manner whatsoever, to secure or obtain this agreement and further certifies that, except as expressly set out in the above, no promise or commitment of any nature whatsoever of any thing of value whatsoever has been made or communicated to any such governing body member or employee or official as inducement or consideration for this agreement.

8.      Acknowledgement of Funding: If any public recognition is made related to the purpose for which the grant was received, such as in media announcements, marketing materials, advertising, or informational campaigns, grant recipients must acknowledge support from the Jefferson County Commission as a body and not solely the sponsoring Commissioner. Jefferson County should be tagged in all social media mentions regarding County-funded projects and awards.

9.      Any violation of this certification shall constitute a breach and default of this agreement which shall be cause for termination.  Upon such termination K.L.A. Memorial shall immediately refund to the County all amounts paid by the County pursuant to this Agreement.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals or caused this agreement to be executed by their duly authorized representatives on the dates reflected below.

JEFFERSON COUNTY, ALABAMA

_____      _____
Date                                   James A. Stephens, President
                                       Jefferson County Commission

KHAIRI AND LITTLE ANGLES' MEMORIAL

_____      _____
Date                                   Tomeka Walker, Executive Director

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved.  **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-934<br>RESOLUTION

WHEREAS, the Agreement between Jefferson County and Syms Contractors was approved by the Jefferson County Commission on August 30, 2018, in Minute Book 172, Page 332,

WHEREAS, the Agreement was previously amended in Minute Book 173, Page 114,

NOW, THEREFORE, BE IT RESOLVED by the Jefferson County Commission that the President, be hereby authorized, empowered and directed to execute this Amendment #2 to increase the amount of the contract with Jefferson County Commission and Syms Contractors for the Fultondale Storm Shelter Project by $10,305.00 and to set the completion date to December 15, 2021. All other terms and conditions of the modified contract shall remain the same. This project will be paid for with Federal Community Development Block Grant Disaster Recovery funds (B-12-UT-01-0001).

Adopted November 4, 2021

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

---

2021-935
RESOLUTION

WHEREAS, Jefferson County, Alabama has conducted a lawful and competitive bidding process for the Docena Community Center Improvements Project (CD19-03E-M01-DCC), such bids having been opened on July 8, 2021 and listed as follow.

| CONTRACTOR | BASE AMOUNT | NOTATION | TOTAL BID | NEGOTIATED |
|---|---|---|---|---|
| Goudy Construction, Inc. | NO BID | | | |
| Jared Building Comp. | $150,900 | $0 | $150,900 | $105,000 |

WHEREAS, after tabulation Lathan Architects and consideration by the Jefferson County Office of Community Services & Workforce Development, it has been recommended that contract be awarded to the lowest responsive bidder, Jared Building Company for the negotiated bid amount of $105,000.00

WHEREAS, the Birmingham Field Office of the U.S. Department of Housing and Urban Development has determined post bid negotiations would be reasonable and cost effective.

NOW THEREFORE BE IT RESOLVED by the Jefferson County Commission that the President, be and hereby is authorized to enter into the attached agreement between Jefferson County, Alabama and Jared Building Company associated with the Docena Community Center Improvements Project (CD19-03E-M01-DCC). The amount of the contract will be One Hundred Five Thousand and 0/100 Dollars ($105,000.00). This will be paid for with Federal Community Development Block Grant funds for PY2019.

**ADOPTED:** November 4, 2021

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

---

2021-936
RESOLUTION

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the Commission President is authorized to execute a modification between Jefferson County, Alabama and the Alabama Department of Commerce, Workforce Development Division for the Education Stabilization Fund - Reimagine Workforce Preparation Grant of $557,137.41. CAPTE will provide On-the-Job Training, Individual Training Accounts, and Customized Training to eligible adults, dislocated workers, and Incumbent workers in the CAPTE area. This modification extends the end date to September 30, 2022, No net change to the Cares Act- Education Stabilization Fund funds.

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

---

2021-937
**RESOLUTION**

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the Commission President be hereby authorized to execute a Community Grant for operation of the Trussville Senior Center in the amount of Ten Thousand Dollars and 00/100 ($10,000).

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

---

2021-938
**RESOLUTION**

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the Commission President be hereby authorized to execute a Community Grant for operation of the Hueytown Senior Center in the amount of Ten Thousand Dollars and 00/100 ($10,000).

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved.  **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

---

2021-939
**RESOLUTION**

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the Commission President be hereby authorized to execute a Community Grant for operation of the New Merkle Senior Center in the amount of Ten Thousand Dollars and 00/100 ($10,000).

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved.  **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

---

2021-940
**RESOLUTION**

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the Commission President be hereby authorized to execute a Community Grant for operation of the Irondale Senior Center in the amount of Ten Thousand Dollars and 00/100 ($10,000)

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved.  **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

---

2021-941
**RESOLUTION**

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the Commission President be hereby authorized to execute a Community Grant for operation of the Fairfield Senior Center in the amount of Ten Thousand Dollars and 00/100 ($10,000).

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved.  **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

---

2021-942
RESOLUTION

WHEREAS, The Emergency Rental Assistance Program was established by section 501 of Division N of the Consolidated Appropriations Act, 2021 (Act). The Act allocated $25 billion to the U. S. Department of the Treasury (Treasury) to provide funds directly to states, territories, local governments, and Indian tribes for households that are unable to pay their rent and utilities due to the financial impacts of the COVID-19 pandemic.; and

WHEREAS, Jefferson County, Alabama received $13,502,418 for the Emergency Rental Assistance Program under the Consolidated Appropriations Act, 2021. And

WHEREAS, Emergency Rental Assistance Program (ERAP) provides emergency financial assistance grants for rent, utility and home energy, and other expense related to housing to eligible individuals and households that have been economically impacted during the COVID-19 pandemic through job loss, furlough or reduction in hours or pay, or increased expenses, residing in eligible areas of the County of Jefferson, Alabama; and

WHEREAS, Emergency grants for rental and/or utility payments are made on behalf of an eligible applicant household, without a prescribed limit per month for a period of up to twelve (12) months, to maintain stable housing and/or to reduce rental or utility payment delinquencies as a result of the economic downturn during the COVID-19 pandemic. Households may request, if needed for housing stability, an additional three (3) months assistance if funding is available. Household assistance may not exceed fifteen (15) months for rent, rental arrears, and prospective rent; and

NOW THEREFORE, BE IT RESOLVED by the Jefferson County Commission that the Commission President is authorized, empowered and directed to award and execute Amendment #2 to the agreement between Jefferson County, Alabama and the Birmingham Urban League. The purpose of this Modification is to update the Exhibit E to allow for additional operational efficiencies allowed by the U.S. Department of Treasury.  All other terms and conditions of the contract shall remain the same.

**ADOPTED:**  November 4, 2021

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved.  **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-943
**RESOLUTION**

Resolution for Jefferson County Office of Community Services & Workforce Development accept the U.S. Department of Housing and Urban Development (HUD) Home Investment Partnerships - American Rescue Plan (HOME-ARP) Funding award for $3,597,411.00. The Commission President is authorized to accept the grant award (M21-UP010202) and sign any related documents required for the grant.

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-944
RESOLUTION

WHEREAS, The Emergency Rental Assistance Program was established by section 501 of Division N of the Consolidated Appropriations Act, 2021 (Act). The Act allocated $25 billion to the U. S. Department of the Treasury (Treasury) to provide funds directly to states, territories, local governments, and Indian tribes for households that are unable to pay their rent and utilities due to the financial impacts of the COVID-19 pandemic.; and

WHEREAS, Jefferson County, Alabama received $13,502,418 for the Emergency Rental Assistance Program under the Consolidated Appropriations Act, 2021. And

WHEREAS, Emergency Rental Assistance Program (ERAP) provides emergency financial assistance grants for rent, utility and home energy, and other expense related to housing to eligible individuals and households that have been economically impacted during the COVID-19 pandemic through job loss, furlough or reduction in hours or pay, or increased expenses, residing in eligible areas of the County of Jefferson, Alabama; and

WHEREAS, Emergency grants for rental and/or utility payments are made on behalf of an eligible applicant household, without a prescribed limit per month for a period of up to twelve (12) months, to maintain stable housing and/or to reduce rental or utility payment delinquencies as a result of the economic downturn during the COVID-19 pandemic. Households may request, if needed for housing stability, an additional three (3) months assistance if funding is available. Household assistance may not exceed fifteen (15) months for rent, rental arrears, and prospective rent; and

NOW THEREFORE, BE IT RESOLVED by the Jefferson County Commission that the Commission President is authorized, empowered and directed to award and execute Amendment #2 to the agreement between Jefferson County, Alabama and the Bridge Ministries. The purpose of this Modification is to update the Exhibit E to allow for additional operational efficiencies allowed by the U.S. Department of Treasury. All other terms and conditions of the contract shall remain the same.

**ADOPTED:** November 4, 2021

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-945
**RESOLUTION**

**BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION** that the Commission President be hereby authorized to execute an Agreement between Jefferson County, Alabama and Kimberly C. Bonner, K.C. Bonner PREA Consultant to provide training and job performance in accordance with the guidelines required by the American Correctional Association, National PREA Resource Center, and Department of Youth Services.

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-946
RESOLUTION

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the Commission President be authorized to execute a Community Infrastructure Agreement with the Friends of McCalla, in the amount of $500,000.00, to help fund completion of a community ballpark.

STATE OF ALABAMA      )
COUNTY OF JEFFERSON )

**COMMUNITY INFRASTRUCTURE AGREEMENT**

WHEREAS, the Jefferson County Commission adopted a Community Grant and Infrastructure Assistance Program; and

WHEREAS, under this Program, the Friends of McCalla, Inc. ("Friends of McCalla"), applied for a grant of funds for $500,000.00; and

WHEREAS, the Friends of McCalla Inc, ("Friends of McCalla"), a 501(c)(3), non-profit organization, seeking funding to finish the fourth baseball field/clean up, and site work and surfacing the driveway and parking areas at the McCalla Youth Sports Complex; and

WHEREAS, the Friends of McCalla meets the eligibility requirements of the Infrastructure Assistance Program and is funding at least 10% of the project cost; and

WHEREAS, Commissioner James Stephens has recommended funding of $500,000.00 from his discretionary infrastructure budget to the Friends of McCalla, and the grant of such funds serves a good and sufficient public purpose; and

WHEREAS, the County Commission has determined that it is in the public interest to provide public funds to assist in the development and promotion of said County resources.

NOW THEREFORE, the parties agree as follows:

1.     The term of this Agreement shall begin upon execution hereof and end on October 19, 2022.

2.     The County shall pay to Friends of McCalla a lump sum payment of $500,000.00 upon execution of this agreement.

3.     The Friends of McCalla shall use the public funds of $500,000.00, 00 funding to finish the fourth baseball field/clean up, and site work and surfacing the driveway and parking areas at the McCalla Youth Sports Complex.

ANY PASS-THROUGH FOR OTHER USES OR PURPOSES IS PROHIBITED.

4.     The Friends of McCalla shall deliver to the Jefferson County Finance Department with a copy to the Jefferson County Manager and to the Office of Commissioner Stephens a detailed report describing the use of the funds and program benefits no later than sixty (60) days following the expenditures or by October 19, 2022, whichever shall occur first.

5.     The Friends of McCalla shall create, collect and retain for inspection and copying by the County or its authorized agent or any examiner from the State Department of Public Accounts, all appropriate financial records, including original invoices, canceled checks, cash receipts and all other supporting documents, as may be necessary to prove receipt of said sum from the County and all expenditures thereof.  All such financial records and supporting documents shall be retained and made available by the Friends of McCalla for a period of not less than three (3) years from termination of the fiscal year set out above.

6.     The Friends of McCalla representative signed below, certifies by the execution of this agreement that no part of the funds paid by the County pursuant to the community grant shall be passed-through to another entity or individual that is not specifically identified or described in the scope of work of this agreement.

7.     The Friends of McCalla  representative signed below, certifies by the execution of this agreement that no part of the funds paid by the County pursuant to this agreement nor any part of services, products, or any item or thing of value whatsoever purchased or acquired with said funds shall be paid to, used by, or used in any way whatsoever for the personal benefit of any member or employee of any government whatsoever or family member of any of them, including federal, state, county, and municipal and any agency or subsidiary of any such government; and further certifies that neither the Friends of McCalla , nor any of its officers, partners, owners, agents, representatives,

employees or parties in interest in any way colluded, conspired, or connived with any member of the governing body or employee of the governing body of the County or any other public official or public employee, in any manner whatsoever, to secure or obtain this agreement and further certifies that, except as expressly set out in the above, no promise or commitment of any nature whatsoever of any thing of value whatsoever has been made or communicated to any such governing body member or employee or official as inducement or consideration for this agreement.

8.      Acknowledgement of Funding:  If any public recognition is made related to the purpose for which the grant was received, such as in media announcements, marketing materials, advertising, or informational campaigns, grant recipients must acknowledge support from the Jefferson County Commission as a body and not solely the sponsoring Commissioner. Jefferson County should be tagged in all social media mentions regarding County-funded projects and awards.

9.      Any violation of this certification shall constitute a breach and default of this agreement which shall be cause for termination.  Upon such termination, the Friends of McCalla shall immediately refund to the County all amounts paid by the County pursuant to this Agreement.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals or caused this agreement to be executed by their duly authorized representatives on the dates reflected below.

JEFFERSON COUNTY, ALABAMA

_____          _____
Date                                              James A. Stephens, President
                                                      Jefferson County Commission

FRIENDS OF MCCALLA, ALABAMA

_____          _____
Date                                              Its:

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved.  **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-947<br>RESOLUTION

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the Commission be hereby authorized to execute and sign a letter to confirm the commitment of the Jefferson County Commission to participate in the Membership of the APTV NextGen TV Broadband Consortium.

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Resolution be Approved.  **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-948<br>RESOLUTION

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the Commission President be hereby authorized to execute a Community Grant Program Agreement between Jefferson County, Alabama, and the Birmingham Community Development Corporation in the amount of $8,000.00 (District 3-$4,000.00, and District 5-$4,000.00), to help funding to continue educations women of color about the Importance of early detection of breast cancer.

STATE OF ALABAMA      )
COUNTY OF JEFFERSON )          **COMMUNITY GRANT PROGRAM**

WHEREAS, the Jefferson County Commission adopted a Community Grant Program and Funding Guidelines ("Program"); and

WHEREAS, under this Program, Birmingham Community Development Corporation, ("BCDC"), applied for a

grant of funds for $8,000.00; and

WHEREAS, BCDC is a 501(c)(3) organization, seeking funding to continue educating women of color about the importance of early detection of breast cancer; and

WHEREAS, BCDC meets the eligibility requirements of the Program; and

WHEREAS, Commissioner James Stephens has recommended funding of $4,000.00 and Commissioner Steve Ammons $4,000.00, totaling $8,000.00, to BCDC and the grant of such funds serves a good and sufficient public purpose; and

WHEREAS, the County Commission has determined that it is in the public interest to provide public funds to assist in the development and promotion of said County resources.

NOW THEREFORE, the parties agree as follows:

1.  The term of this Agreement shall begin upon execution hereof and end on October 19, 2022.

2.  The County shall pay to BCDC lump sum payment of $8,000.00 upon execution of this agreement.

3.  BCDC shall use the public funds to continue educating women of color about the importance of early detection of breast cancer.

ANY PASS-THROUGH FOR OTHER USES OR PURPOSES IS PROHIBITED.

4.  BCDC shall deliver to the Jefferson County Finance Department with a copy to the Jefferson County Manager and to the Office of Commissioner Stephens and Commissioner Ammons, a detailed report describing the use of the funds and program benefits no later than sixty (60) days following the expenditures or by October 19, 2022, whichever shall occur first.

5.  BCDC shall create, collect and retain for inspection and copying by the County or its authorized agent or any examiner from the State Department of Public Accounts, all appropriate financial records, including original invoices, canceled checks, cash receipts and all other supporting documents, as may be necessary to prove receipt of said sum from the County and all expenditures thereof.  All such financial records and supporting documents shall be retained and made available by BCDC for a period of not less than three (3) years from termination of the fiscal year set out above.

6.  BCDC representative signed below, certifies by the execution of this agreement that no part of the funds paid by the County pursuant to the community grant shall be passed-through to another entity or individual that is not specifically identified or described in the scope of work of this agreement.

7.  BCDC representative signed below, certifies by the execution of this agreement that no part of the funds paid by the County pursuant to this agreement nor any part of services, products, or any item or thing of value whatsoever purchased or acquired with said funds shall be paid to, used by, or used in any way whatsoever for the personal benefit of any member or employee of any government whatsoever or family member of any of them, including federal, state, county, and municipal and any agency or subsidiary of any such government; and further certifies that neither  BCDC, nor any of its officers, partners, owners, agents, representatives, employees or parties in interest in any way colluded, conspired, or connived with any member of the governing body or employee of the governing body of the County or any other public official or public employee, in any manner whatsoever, to secure or obtain this agreement and further certifies that, except as expressly set out in the above, no promise or commitment of any nature whatsoever of any thing of value whatsoever has been made or communicated to any such governing body member or employee or official as inducement or consideration for this agreement.

8.  Acknowledgement of Funding:  If any public recognition is made related to the purpose for which the grant was received, such as in media announcements, marketing materials, advertising, or informational campaigns, grant recipients must acknowledge support from the Jefferson County Commission as a body and not solely the sponsoring Commissioner. Jefferson County should be tagged in all social media mentions regarding County-funded projects and awards.

9.  Any violation of this certification shall constitute a breach and default of this agreement which shall be

cause for termination.   Upon such termination BCDC shall immediately refund to the County all amounts paid by the County pursuant to this Agreement.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals or caused this agreement to be executed by their duly authorized representatives on the dates reflected below.

JEFFERSON COUNTY, ALABAMA

_____                    _____
Date                                                                James A. Stephens, President
                                                                        Jefferson County Commission

                                                                        BIRMINGHAM COMMUNITY DEVELOPMENT
                                                                        CORPORATION

_____                    _____
Date                                                                Its:

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

---

2021-949
RESOLUTION

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the Commission hereby authorizes and directs that payment of any unused accrued vacation and sick time as of the effective retirement date of October 1, 2021, be issued to Tony Petelos.

BE IT FURTHER RESOVED that the County Manager is directed to instruct the Chief Financial Officer to effectuate said payment.

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Resolution be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

---

2021-950
CONTRACT
JEFFERSON COUNTY PROJECT NO. 37-18-411

THIS AGREEMENT made and entered into this 4th day of November, Two Thousand and by and between the JEFFERSON COUNTY, ALABAMA, party of the first part (hereinafter called the COUNTY) and MSE Building Company, Inc, party of the second part (hereinafter called Contractor),
WITNESSETH:

WHEREAS, the COUNTY desires the Furnishing and Installing Precast Concrete Bridge on Deer Haven Road, herein known as Project No. 37-18-411, Furnishing and Installing Precast Concrete Bridge and approach roads on Deer Haven Road, hereinafter more particularly described and the Contractor desires to furnish and deliver all the material and to do and perform all the work and labor for the said purpose;

NOW, THEREFORE, in consideration of the premises, the mutual covenants herein contained the parties hereto agree as follows:

1 . The Contractor promises and agrees to furnish and deliver all the material and to do and perform all the work and labor required to be furnished and delivered, done and performed in and about the Furnishing and Installing Precast Concrete Bridge on Deer Haven Road, JEFFERSON COUNTY, known as Project No. 37-18-411, same to be in strict and entire conformity with the provisions of the Contract, and the Notice to Contractors and the Proposal, and the Plans and Specifications (including Special Provisions) prepared (or approved) by the Director/County Engineer, the original of which are on file in the office of the Director/County Engineer and which said Plans and Specifications and the Notice to Contractors and the Proposal are hereby made a part of this Agreement as fully and to the same effect as if the same had been set forth at length in the body of this Agreement.

2.  The COUNTY agrees and promises to pay to the Contractor for said Work, when completed in accordance with the Provisions of this Contract, the price as set forth in the said Proposal amounting approximately to One Million One Hundred Nineteen Thousand Two Hundred Ninety-Eight Dollars and Forty-Two Cents ($1.119,298.42), payments made as provided in said Specifications upon presentation of the proper certificates of the Director/County Engineer or his representatives and upon the terms set forth in the said Specifications and pursuant to the terms of this Contract.

3.  The said work shall be done in accordance with the laws of the State of Alabama under the direct supervision, and to the entire satisfaction of the Director/County Engineer, subject at all times to his inspection and approval, and in accordance with the applicable Federal, State, or local rules and regulations.

4.  The decision of said Director/County Engineer upon any question connected with the execution of this Agreement or any failure or delay in the prosecution of the Work by the said Contractor shall be final and conclusive.

IN WITNESS WHEREOF, JEFFERSON COUNTY, ALABAMA has caused these presents to be executed by JAMES A. (JIMMIE) STEPHENS, PRESIDENT OF THE JEFFERSON COUNTY COMMISSION AND MSE Building Company Inc., The Contractor, has hereto set his hand and seal this the day, month and year above written.

JEFFERSON COUNTY, ALABAMA

Signed, sealed, and delivered in the presence of:

James A. (Jimmie) Stephens, President Jefferson County Commission

MSE Building Company Inc. Contractor (Company Name)

By:

Title

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved.  **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

---

2021-951
**<u>RESOLUTION</u>**


BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that upon the recommendation of the Director of Roads and Transportation and the Director of Environmental Services, the President of the Commission, is hereby authorized to execute a Quitclaim Deed releasing the abandoned Sanitary Sewer Rights-of-Way located in Halcyon a/k/a Cahaba Oaks Business Park 14 Sector to Tortorigi Development, LLC, Richard Akel and Penny Suzanne Akel and Billy Yackee. These Rights-of-Way were acquired through donation as part of Cahaba Oaks Business Park Project.  The sewer lines, S2 and S3, were never constructed.


Certification

STATE OF ALABAMA)

JEFFERSON COUNTY)


I, Mildred G. Diliberto, Minute Clerk of the Jefferson County Commission, hereby certify that the above and foregoing is a true and correct copy and/or transcript of a resolution duly adopted and approved by the Jefferson County Commission at its regular meeting held on the 4th day of November, 2021, as same appears and is recorded in Minute Book 175, Page(s) 582, of the Official Minutes and Records of said County Commission.

GIVEN, under my hand and seal of Jefferson County, Alabama this the 4th day of November, 2021.

_____

Mildred G. Diliberto
Minute Clerk
Jefferson County Commission
My Commission Expires: August 23, 2023

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Resolution be Approved.  **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

---

2021-952

STATE OF ALABAMA)JEFFERSON COUNTY)

CONTACT NO. 00003964MUNIS CONTRACT NO. 20190500

### Contract Amendment No. 2

This Amendment to Contract entered into, by and between **Jefferson County, Alabama,** hereinafter called "the County", and **AECOM Technical Services, Inc.,** hereinafter called "the Consultant". The effective date of this amendment shall be upon Commission approval.

### WITNESSETH:

**WHEREAS,** the County desires to amend the Contract; and

**WHEREAS,** the Consultant wished to amend the Contract;

**NOW, THEREFORE,** in consideration of the above, the parties hereto agree asfollows:

The original contract between parties referenced above was approved by the Commission on August 27,2019, recorded in MB 173, page(s) 443 and Amendment No. 1, was approved by the Commission on April 8, 2021, recorded in MB 175, page 171, and are hereby amended as follows:

**Term is extended for an additional year and services shall commence on August 27, 2021 and endon August 27, 2022.**

All other terms and conditions of original contract remains the same.

**JEFFERSON COUNTY COMMISSION**

**By:**

James A. "Jimmie" Stephens, PresidentJefferson County Commission

**Date:**_____

**AECOM Technical Services, Inc.**

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved.  **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

---

2021-953
**RESOLUTION**
**October 4, 2021**

WHEREAS, Susan Bonnett Northcutt and Walter Lynn Northcutt are the owners of the land abutting the

following described road right-of-way, situated in Jefferson County, Alabama, to-wit:

A parcel of land situated in the Northeast quarter of the Northeast quarter of Section 14, Township 18 South, Range 5 West, Huntsville Principal Meridian, Jefferson County, Alabama, and being more particularly described as follows:

Commence at a three inch pipe presently marking the Southwest corner of said Northeast quarter of the Northeast quarter; thence, in a northerly direction, along and with said West line, 638.66 feet to a five-eighths inch rebar on the southerly right of way margin of Harry Pickens Road (presently known as Victory Lane) as recorded in Real 434 at Page 765; thence with a deflection of 89°46'00"right, in an easterly direction, leaving said West line and along and with said southerly right of way margin, 55.00 feet to the point of beginning of the centerline of a 50 foot wide right of way, said right of way lying 25 feet on each side of the following described centerline; thence with a deflection of 90°14' right, in a southerly direction, along and with said centerline, 325.00 feet to the end of said centerline and said right of way.

The sidelines of the above described right of way shall be lengthened or shortened at the point of beginning to coincide with the present right of way of Harry Pickens Road (presently known as Victory Lane).

Less and except 25 feet from the center line of any public Right-of-Way that is abutting the above described properties.

WHEREAS, the above owner is desirous of vacating said tract of land described above and requests that the assent of the County Commission of Jefferson County, Alabama, be given as required by law in such cases:

That after vacation of the above-described tract of land located as above described, and all public rights and easements therein, convenient means of ingress and egress to and from the property will be afforded to all other property owners owning property in or near the tract of land embraced in said map, plat or survey by the remaining streets, avenues or highways dedicated by said map, plat or survey.

NOW, THEREFORE, BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION, that it assents and it does hereby assent to said Susan Bonnett Northcutt and Walter Lynn Northcutt the tract of land as above described and that the above-described property be and the same is hereby vacated and annulled, and that all public rights and easements therein divested of the property; subject, however, to all existing rights-of-way or easements for public utilities and to all utility facilities presently situated in said area vacated subject to this provision. Entities with utility lines, equipment, or facilities in place at the time of vacation, shall have the right to continue to maintain, extend, and enlarge their lines, equipment, and facilities to the same extent as if the vacation had not occurred.

 A check for $100 has been received for administrative fees.

I, Mildred G. Diliberto, Minute Clerk, Jefferson County Commission, hereby certify that the above and foregoing is a true and correct transcript of a resolution duly adopted by the Jefferson County Commission on the 4th day of November, 2021, recorded in Minute Book 175, Page(s) 583, of the Official Minutes and Records of said County Commission.

GIVEN, under my hand and seal of Jefferson County, Alabama, this the 4th day of November, 2021.

_____
Mildred G. Diliberto
Minute Clerk
Jefferson County Commission
My Commission Expires August 23, 2023

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Resolution be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-954
## CONSTRUCTION  AGREEMENT

This Construction Agreement ("**Agreement**") is made as of _____, 20_, by and between CSX TRANSPORTATION, INC., a  Virginia  corporation  with  itsprincipal place of business in Jacksonville, Florida ("**CSXT**"), and Jefferson County, a body corporate and political subdivision of the State of Alabama ("Agency").

### EXPLANATORY STATEMENT

1. Agency has proposed to construct, or to cause to be constructed, **S. Shades Crest Road Bridgereplacement over CSXT in Hoover, Jefferson County, AL at MP ANJ-966.77, DOT 639546F in Atlanta Zone, Lineville Subdivision** (the "**Project**").
2. Agency has obtained, or will obtain, all authorizations, permits and approvals from all local, state and

federal agencies (including Agency), and their respective governing bodies and regulatory agencies, necessary to proceed with the Project and to appropriate all funds necessary to construct the Project.

3. Agency acknowledges that: (i) by entering into this Agreement, CSXT will provide services and accommodations to promote public interest in this Project, without profit or other economic inducement typical of other Agency contractors; (ii) neither CSXT nor its affiliates (including their respective directors, officers, employees or agents) will incur any costs, expenses, losses or liabilities in excess of payments made to CSXT, by or on behalf of Agency or its contractors, pursuant to this Agreement; and (iii) CSXT retains the paramount right to regulate all activities affecting its property and operations.

4. It is the purpose of this Agreement to provide for the terms and conditions upon which the Project may proceed.

NOW, THEREFORE, in consideration of the foregoing Explanatory Statement and other good and valuable consideration, the receipt and sufficiency of which are acknowledged by the parties, the parties agree as follows:

1. Project Plans and Specifications

   1.1 Preparation and Approval. Pursuant to Exhibit A of this Agreement, all plans, specifications, drawings and other documents necessary or appropriate to the design and construction of the Project shall be prepared, at Agency's sole cost and expense, by Agency or CSXT or their respective contractors. Project plans, specifications and drawings prepared by or on behalf of Agency shall be subject, at CSXT's election, to the review and approval of CSXT. Such plans, specifications and drawings, as prepared or approved by CSXT, are referred to as the "**Plans**", and shall be incorporated and deemed a part of this Agreement. Plans prepared or submitted to and approved by CSXT as of the date of this Agreement are set forth in Exhibit B to this Agreement.

   1.2 Effect of CSXT Approval or Preparation of Plans. By its review, approval or preparation of Plans pursuant to this Agreement, CSXT signifies only that such Plans and improvements constructed in accordance with such Plans satisfy CSXT's requirements. CSXT expressly disclaims all other representations and warranties in connection with the Plans, including, but not limited to, the integrity, suitability, or fitness for the purposes of Agency or any other persons of the Plans or improvements constructed in accordance with the Plans.

   1.3 Compliance with Plans. The Project shall be constructed in accordance with the Plans.

2. Allocation and Conduct of Work

   Work in connection with the Project shall be allocated and conducted as follows:

   2.1 CSXT Work. Subject to timely payment of Reimbursable Expenses as provided by Section 4, CSXT shall provide, or cause to be provided, the services as set forth by Exhibit A to this Agreement. Agency agrees that CSXT shall provide all services that CSXT deems necessary or appropriate (whether or not specified by Exhibit A) to preserve and maintain its property and operations, without impairment or exposure to liability of any kind and in compliance with all applicable federal, state and local regulations and CSXT's contractual obligations, including, but not limited to, CSXT's existing or proposed third party agreements and collective bargaining agreements.

   2.2 Agency Work. Agency shall perform, or cause to be performed, all work as set forth by Exhibit A, at Agency's sole cost and expense.

   2.3 Conduct of Work. CSXT shall commence its work under this Agreement following: (i) delivery to CSXT of a notice to proceed from Agency; (ii) payment of Reimbursable Expenses (as provided by Section 4.1) as required by Section 4 prior to the commencement of work by CSXT; (iii) issuance of all permits, approvals and authorizations necessary or appropriate for such work; and (iv) delivery of proof of insurance acceptable to CSXT, as required by Section 9. The initiation of any services by CSXT pursuant to this Agreement, including, but not limited to, the issuance of purchase orders or bids for materials or services, shall constitute commencement of work for the purposes of this Section. The parties intend that all work by CSXT or on CSXT property shall conclude no later than **August 31, 2023** unless the parties mutually agree to extend such date.

3. Special Provisions. Agency shall observe and abide by, and shall require its contractors ("**Contractors**") to observe and abide by the terms, conditions and provisions set forth in Exhibit C to this Agreement (the "Special Provisions"). To the extent that Agency performs Project work itself, Agency shall be deemed a Contractor for purposes of this Agreement. Agency further agrees that, prior to the commencement of Project work by any third-party Contractor, such Contractor shall execute and deliver to CSXT Schedule I to this Agreement to acknowledge Contractor's agreement to observe and abide by the terms and conditions of this Agreement.

4. Cost of Project and Reimbursement Procedures

   4.1 Reimbursable Expenses. Agency shall reimburse CSXT for all costs and expenses incurred by CSXT in connection with the Project, including, without limitation: (1) all out of pocket expenses, (2) travel and lodging expenses, (3) telephone, facsimile, and mailing expenses, (4) costs for equipment, tools, materials and supplies, (5) sums paid to CSXT's consultants and subcontractors, and (6) CSXT labor in connection with the Project, together with CSXT labor overhead percentages established by CSXT pursuant to applicable law (collectively, "**Reimbursable Expenses**"). Reimbursable Expenses shall also include expenses incurred by CSXT prior to the date of this Agreement to the extent identified by the Estimate provided pursuant to Section 4.2.

   4.2 Estimate. CSXT has estimated the total Reimbursable Expenses for the Project as shown on Exhibit D

(the "**Estimate**", as amended or revised). In the event CSXT anticipates that actual Reimbursable Expenses for the Project may exceed such Estimate, it shall provide Agency with the revised Estimate of the total Reimbursable Expenses, together with a revised Payment Schedule (as defined by Section 4.3.1), for Agency's approval and confirmation that sufficient funds have been appropriated to cover the total Reimbursable Expenses of such revised Estimate. CSXT may elect, by delivery of notice to Agency, to immediately cease all further work on the Project, unless and until Agency provides such approval and confirmation.

4.3   <u>Payment Terms</u>.

    4.3.1 Agency shall pay CSXT for Reimbursable Expenses in the amounts and on the dates set forth in the Payment Schedule as shown on <u>Exhibit E</u> (the "Payment Schedule", as revised pursuant to Section 4.2). CSXT agrees to submit invoices to Agency for such amounts and Agency shall remit payment to CSXT at the later of thirty (30) days following delivery of each such invoice to Agency or, the payment date (if any) set forth in the Payment Schedule.

    4.3.2 Following completion of the Project, CSXT shall submit to Agency a final invoice that reconciles the total Reimbursable Expenses incurred by CSXT against the total payments received from Agency. Agency shall pay to CSXT the amount by which Reimbursable Expenses exceed total payments as shown by the final invoice, within thirty (30) days following delivery of such invoice to Agency. In the event

    that the payments received by CSXT from Agency exceed the Reimbursable Expenses, CSXT shall remit such excess to Agency.

    4.3.3 In the event that Agency fails to pay CSXT any sums due CSXT under this Agreement: (i) Agency shall pay CSXT interest at the lesser of 1.0% per month or the maximum rate of interest permitted by applicable law on the delinquent amount until paid in full; and (ii) CSXT may elect, by delivery of notice to Agency: (A) to immediately cease all further work on the Project, unless and until Agency pays the entire delinquent sum, together with accrued interest; and/or (B) to terminate this Agreement.

    4.3.4 All invoices from CSXT shall be delivered to Agency in accordance with Section 16 of this Agreement. All payments by Agency to CSXT shall be made by certified check and mailed to the following address or such other address as designated by CSXT's notice to Agency:

CSX Transportation, Inc.
P.O. Box 530192 Atlanta, GA
30353-0192

4.4   <u>Effect of Termination</u>. Agency's obligation to pay to CSXT Reimbursable Expenses in accordance with Section 4 shall survive termination of this Agreement for any reason.

5.   <u>Appropriations</u> Agency represents to CSXT that: (i) Agency has appropriated funds sufficient to reimburse CSXT for the Reimbursable Expenses encompassed by the Estimate attached as <u>Exhibit D</u>; (ii) Agency shall use its best efforts to obtain appropriations necessary to cover Reimbursable Expenses encompassed by subsequent Estimates approved by Agency; and (iii) Agency shall promptly notify CSXT in the event that Agency is unable to obtain such appropriations.

6.   <u>Easements and Licenses</u>

    6.1   <u>Agency Obligation</u>. Agency shall acquire all necessary licenses, permits and easements required for the Project.

    6.2   <u>Temporary Construction Licenses</u>. Insofar as it has the right to do so, CSXT hereby grants Agency a nonexclusive license to access and cross CSXT's property, to the extent necessary for the construction of the Project (excluding ingress or egress over public grade crossings), along such routes and upon such terms as may be defined and imposed by Railroad and as may be designated on the Plans approved by CSXT.

    6.3   <u>Temporary Construction Easements</u>. CSX may grant without warranty to Agency if required temporary non-exclusive easement for access to the extent necessary for the project on terms and conditions, and at a price acceptable to the parties.

    6.4   <u>Permanent Easements</u>. Insofar as it has the right to do so, CSXT shall grant, without warranty to Agency, easements for the use and maintenance of the Project wholly or partly on CSXT property as shown on the Plans approved by CSXT, if any, on terms and conditions and at a price acceptable to the parties. Upon request by CSXT, Agency shall furnish to CSXT descriptions and plat plans for the easements.

7.   <u>Permits.</u> At its sole cost and expense, Agency shall procure all permits and approvals required by any federal, state, or local governments or governmental agencies for the construction, maintenance and use of the Project, copies of which shall be provided to CSXT.

8.   <u>Termination</u>

    8.1   <u>By Agency</u>. For any reason, Agency may, as its sole remedy, terminate this Agreement by delivery of notice to CSXT. Agency shall not be entitled to otherwise pursue claims for consequential, direct, indirect or incidental damages or lost profits as a consequence of CSXT's default or termination of this Agreement or Work on the Project by either party.

    8.2   <u>By CSXT</u>. In addition to the other rights and remedies available to CSXT under this Agreement, CSXT may terminate this Agreement by delivery of notice to Agency in the event Agency or its Contractors fail to observe the terms or conditions of this Agreement and such failure continues more

than ten (10) business days following delivery of notice of such failure by CSXT to Agency.

8.3 <u>Consequences of Termination</u>. If the Agreement is terminated by either party pursuant to this Section or any other provision of this Agreement, the parties understand that it may be impractical for them to immediately stop the Work. Accordingly, they agree that, in such instance a party may continue to perform Work until it has reached a point where it may reasonably and safely suspend the Work. Agency shall reimburse CSXT pursuant to this Agreement for the Work performed, plus all costs reasonably incurred by CSXT to discontinue the Work and protect the Work upon full suspension of the same, the cost of returning CSXT's property to its former condition, and all other costs of CSXT incurred as a result of the Project up to the time of full suspension of the Work. Termination of this Agreement or Work on the Project, for any reason, shall not diminish or reduce Agency's obligation to pay CSXT for Reimbursable Expenses incurred in accordance with this Agreement. In the event of the termination of this Agreement or the Work for any reason, CSXT's only remaining obligation to Agency shall be to refund to Agency payments made to CSXT in excess of Reimbursable Expenses in accordance with Section 4.

9. <u>Insurance.</u> In addition to the insurance that Agency requires of its Contractor, Agency shall acquire or require its Contractor to purchase and maintain insurance in compliance with CSXT's insurance requirements attached to this Agreement as <u>Exhibit F</u>. Neither Agency nor Contractor shall commence work on the Project until such policy or policies have been submitted to and approved by CSXT's Risk Management Department.

10. <u>Ownership and Maintenance.</u>

10.1 <u>By Agency</u>. Agency shall own and, without cost to CSXT, maintain, repair, replace and renew, or cause same to be done, in good condition and repair to CSXT's satisfaction, the highway overpass structure, the roadway surfacing, the roadway slopes, the retaining walls, and the highway drainage facilities. In the event that Agency fails to properly maintain such structures and improvements and such failure, in the opinion of CSXT, jeopardizes the safe and efficient operation of its property, CSXT shall be entitled to remedy such failure and recover from Agency the costs incurred by CSXT in doing so. Upon the cessation of use of the Project by Agency, Agency shall remove the bridge structure and restore CSXT's property to its original condition, at Agency's sole cost and expense, to CSXT's satisfaction.

10.2 <u>Alterations</u>. Agency shall not undertake any alteration, modification or expansion of the Project, without the prior approval of CSXT, which may be withheld for any reason, and the execution of such agreements as CSXT may require.

11. <u>Indemnification</u>

11.1 <u>Generally</u>. To the maximum extent permitted by applicable law, Agency and its Contractors shall indemnify, defend, and hold CSXT and its affiliates harmless from and against all claims, demands, payments, suits, actions, judgments, settlements, and damages of every nature, degree, and kind (including direct, indirect, consequential, incidental, and punitive damages), for any injury to or death to any person(s) (including, but not limited to the employees of CSXT, its affiliates, Agency or its Contractors), for the loss of or damage to any property whatsoever (including but not limited to property owned by or in the care, custody, or control of CSXT, its affiliates, Agency or its Contractors, and environmental damages and any related remediation brought or recovered against CSXT and its affiliates), arising directly or indirectly from the negligence, recklessness or intentional wrongful misconduct of the Contractors, Agency, and their respective agents, employees, invitees, contractors, or its contractors' agents, employees or invitees in the performance of work in connection with the Project or activities incidental thereto, or from their presence on or about CSXT's property. The foregoing indemnification obligation shall not be limited to the insurance coverage required by this Agreement, except to the extent required by law or otherwise expressly provided by this Agreement.

11.2 <u>Compliance with Laws</u>. Agency shall comply, and shall require its Contractors to comply, with any federal, state, or local laws, statutes, codes, ordinances, rules, and regulations applicable to its construction and maintenance of the Project. Agency's Contractors shall indemnify, defend, and hold CSXT and its affiliates harmless with respect to any fines, penalties, liabilities, or other consequences arising from breaches of this Section.

11.3 <u>"CSXT Affiliates"</u>. For the purpose of this Section 11, CSXT's affiliates include CSX Corporation and all entities, directly or indirectly, owned or controlled by or under common control of CSXT or CSX Corporation and their respective officers, directors, employees and agents.

11.4 <u>Notice of Incidents</u>. Agency and its Contractor shall notify CSXT promptly of any loss, damage, injury or death arising out of or in connection with the Project work.

11.5 <u>Survival</u>. The provisions of this Section 11 shall survive the termination or expiration of this Agreement.

12. <u>Independent Contractor.</u> The parties agree that neither Agency nor its Contractors shall be deemed either agents or independent contractors of CSXT. Except as otherwise provided by this Agreement, CSXT shall exercise no control whatsoever over the employment, discharge, compensation of, or services rendered by Agency or Agency's Contractors, or the construction practices, procedures, and professional judgment employed by Agency or its Contractor to complete the Project. Notwithstanding the foregoing, this Section 12 shall in no way affect the absolute authority of CSXT to prohibit Agency or its Contractors or anyone

from entering CSXT's property, or to require the removal of any person from its property, if it determines, in its sole discretion, that such person is not acting in a safe manner or that actual or potential hazards in, on or about the Project exist.

13. "Entire Agreement" This Agreement embodies the entire understanding of the parties, may not be waived or modified except in a writing signed by authorized representatives of both parties, and supersedes all prior or contemporaneous written or oral understandings, agreements or negotiations regarding its subject matter. In the event of any inconsistency between this Agreement and the Exhibits, the more specific terms of the Exhibits shall be deemed controlling.

14. Waiver. If either party fails to enforce its respective rights under this Agreement, or fails to insist upon the performance of the other party's obligations hereunder, such failure shall not be construed as a permanent waiver of any rights or obligations in this Agreement.

15. Assignment. CSXT may assign this Agreement and all rights and obligations herein to a successor in interest, parent company, affiliate, or future affiliate. Upon assignment of this Agreement by CSXT and the assumption of CSXT's assignee of CSXT's obligations under this Agreement, CSXT shall have no further obligation under this Agreement. Agency shall not assign its rights or obligations under this Agreement without CSXT's prior consent, which consent may be withheld for any reason.

16. Notices. All notices, consents and approvals required or permitted by this Agreement shall be in writing and shall be deemed delivered upon personal delivery, upon the expiration of three
(3) days following mailing by first class U.S. mail, or upon the next business day following mailing by a nationally recognized overnight carrier, to the parties at the addresses set forth below, or such other addresses as either party may designate by delivery of prior notice to the other party:

|  |  |
|---|---|
| If to CSXT: | CSX Transportation, Inc.<br>CSX 500 Water Street, J301 Jacksonville,<br>Florida 32202 Attention: Edward C. Sparks<br>II, PE<br>Chief Engineer - Bridges, Design & Construction |
| If to Agency: | Jefferson County Commission<br>716 Richard Arrington Jr. Blvd. N.Room<br>A-200 Courthouse Birmingham, Alabama<br>35203 Attention: |

17. Severability. The parties agree that if any part, term or provision of this Agreement is held to be illegal, unenforceable or in conflict with any applicable federal, state, or local law or regulation, such part, term or provision shall be severable, with the remainder of the Agreement remaining valid and enforceable.

18. Applicable Law. This Agreement shall be governed by the laws of the State of Alabama, exclusive of its choice of law rules. The parties further agree that the venue of all legal and equitable proceedings related to disputes under this Agreement shall be situated in Duval County, Florida, and the parties agree to submit to the personal jurisdiction of any State or Federal court situated in Duval County, Florida.

REMAINDER OF PAGE LEFT INTENTIONALLY BLANK

BY SIGNING THIS AGREEMENT, I certify that there have been no changes made to the content of this Agreement since its approval by the CSXT Legal Department on May 28, 2020.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed in duplicate, each by its duly authorized officers, as of the date of this Agreement.

JEFFERSON COUNTY, AL

By:_____

Name:_____

Title:_____

CSX TRANSPORTATION, INC.

By:_____
Name: Edward D. Sparks II, PE
Title: Chief Engineer - Bridges, Design & Construction

**EXHIBIT A**
ALLOCATION OF WORK

Subject to Section 2.1, work to be performed in connection with the Project is allocated as follows:

   A.    Agency shall let by contract to its Contractors:
         1.  S. Shades Crest Road Bridge Replacement over CSXT right-of-way according to

the approved final plans.

B.    CSXT shall perform or cause to be performed:
1.    Flagging services and other protective services and devices as may be necessary.
2.    Construction engineering and inspection to protect the interest of CSXT.
3.    Excess Soil Support Services and described in the Soil and Water Management Policy found in CSXT's Public Project Manual dated August 2020.
4.    Accounting and Administrative Services related to the foregoing.

## EXHIBIT B

### PLANS AND SPECIFICATIONS

Plans, Specifications and Drawings:

As of the date of this Agreement, the following plans, specifications and drawings have been submitted by Agency to CSXT for its review and approval:

·    **Plans of Proposed Project Number 0759400 South Shades Crest Rd. Improvements Bridge, Grade, Drain, Base, Signing, Striping, Retaining Walls, and Signals (161 Sheets) - made available on September 23, 2019.**

| SHEET | DESCRIPTION | PREPARER | DATE |
|---|---|---|---|

## EXHIBIT C

### CSXT SPECIAL PROVISIONS

DEFINITIONS:

As used in these Special Provisions, all capitalized terms shall have the meanings ascribed to them by the Agreement, and the following terms shall have the meanings ascribed to them below:

"CSXT" shall mean CSX Transportation, Inc., its successors and assigns.

"CSXT Representative" shall mean the authorized representative of CSX Transportation, Inc.

"Agreement" shall mean the Agreement to which this Exhibit C is made a part thereof and as may be amended from time to time.

"Agency" shall mean the Jefferson County, Alabama.

"Agency Representative" shall mean the authorized representative of Jefferson County, Alabama. "Contractor"

shall have the meaning ascribed to such term by the Agreement.

"Work" shall mean the Project as described in the Agreement.

I.    AUTHORITY OF CSXT ENGINEER

The CSXT Representative shall have final authority in all matters affecting the safe maintenance of CSXT operations and CSXT property, and his or her approval shall be obtained by the Agency or its Contractor for methods of construction to avoid interference with CSXT operations and CSXT property and all other matters contemplated by the Agreement and these Special Provisions.

II.    INTERFERENCE WITH CSXT OPERATIONS

A.    Agency or its Contractor shall arrange and conduct its work so that there will be no interference with CSXT operations, including train, signal, telephone and telegraphic services, or damage to CSXT's property, or to poles, wires, and other facilities of tenants on CSXT's Property or right-of-way. Agency or its Contractor shall store materials so as to prevent trespassers from causing damage to trains, or CSXT Property. Whenever Work is likely to affect the operations or safety of trains, the method of doing such Work shall first be submitted to the CSXT Representative for approval, but such approval shall not relieve Agency or its Contractor from liability in connection with such Work.

B.    If conditions arising from or in connection with the Project require that immediate and unusual provisions be made to protect train operation or CSXT's property, Agency or its Contractor shall make such provision. If the CSXT Representative determines that such provision is insufficient, CSXT may, at the expense of Agency or its Contractor, require or provide such provision as may be deemed necessary, or cause the Work to cease immediately.

III.    NOTICE OF STARTING WORK.  Agency or its Contractor shall not commence any work on CSXT Property or rights-of-way until it has complied with the following conditions:

A.    Notify CSXT in writing of the date that it intends to commence Work on the Project. Such notice must be received by CSXT at least ten business days in advance of the date Agency or its Contractor proposes to begin Work on CSXT property. The notice must refer to this Agreement by date. If flagging service is required, such notice shall be submitted at least thirty

(30) business days in advance of the date scheduled to commence the Work.

    B.    Obtain authorization from the CSXT Representative to begin Work on CSXT property, such authorization to include an outline of specific conditions with which it must comply.

    C.    Obtain from CSXT the names, addresses and telephone numbers of CSXT's personnel who must receive notice under provisions in the Agreement. Where more than one individual is designated, the area of responsibility of each shall be specified.

IV.    WORK FOR THE BENEFIT OF THE CONTRACTOR

    A.    No temporary or permanent changes to wire lines or other facilities (other than third party fiber optic cable transmission systems) on CSXT property that are considered necessary to the Work are anticipated or shown on the Plans. If any such changes are, or become, necessary in the opinion of CSXT or Agency, such changes will be covered by appropriate revisions to the Plans and by preparation of a force account estimate. Such force account estimate may be initiated by either CSXT or Agency, but must be approved by both CSXT and Agency. Agency or Contractor shall be responsible for arranging for the relocation of the third party fiber optic cable transmission systems, at no cost or expense to CSXT.

    B.    Should Agency or Contractor desire any changes in addition to the above, then it shall make separate arrangements with CSXT for such changes to be accomplished at the Agency or Contractor's expense.

V.    HAUL ACROSS RAILROAD

    .    If Agency or Contractor desires access across CSXT property or tracks at other than an existing and open public road crossing in or incident to construction of the Project, the Agency or Contractor must first obtain the permission of CSXT and shall execute a license agreement or right of entry satisfactory to CSXT, wherein Agency or Contractor agrees to bear all costs and liabilities related to such access.

    B.    Agency and Contractor shall not cross CSXT's property and tracks with vehicles or equipment of any kind or character, except at such crossing or crossings as may be permitted pursuant to this section.

VI.    COOPERATION AND DELAYS

    A.    Agency or Contractor shall arrange a schedule with CSXT for accomplishing stage construction involving work by CSXT. In arranging its schedule, Agency or Contractor shall ascertain, from CSXT, the lead time required for assembling crews and materials and shall make due allowance therefore.

    B.    Agency or Contractor may not charge any costs or submit any claims against CSXT for hindrance or delay caused by railroad traffic; work done by CSXT or other delay incident to or necessary for safe maintenance of railroad traffic; or for any delays due to compliance with these Special Provisions.

    C.    Agency and Contractor shall cooperate with others participating in the construction of the Project to the end that all work may be carried on to the best advantage.

    D.    Agency and Contractor understand and agree that CSXT does not assume any responsibility for work performed by others in connection the Project. Agency and Contractor further understand and agree that they shall have no claim whatsoever against CSXT for any inconvenience, delay or additional cost incurred by Agency or Contractor on account of operations by others.

VII.    STORAGE OF MATERIALS AND EQUIPMENT

Agency and Contractor shall not store their materials or equipment on CSXT's property or where they may potentially interfere with CSXT's operations, unless Agency or Contractor has received CSXT Representative's prior written permission. Agency and Contractor understand and agree that CSXT will not be liable for any damage to such materials and equipment from any cause and that CSXT may move, or require Agency or Contractor to move, such material and equipment at Agency's or Contractor's sole expense. To minimize the possibility of damage to the railroad tracks resulting from the unauthorized use of equipment, all grading or other construction equipment that is left parked near the tracks unattended by watchmen shall be immobilized to the extent feasible so that it cannot be moved by unauthorized persons.

VIII.    CONSTRUCTION PROCEDURES

    A.    General

        1.    Construction work on CSXT property shall be subject to CSXT's inspection and approval.

        2.    Construction work on CSXT property shall be in accord with CSXT's written outline of specific conditions and with these Special Provisions.

        3.    Contractor shall observe the terms and rules of the CSXT Safe Way manual, which Agency and Contractor shall be required to obtain from CSXT, and in accord with any other instructions furnished by CSXT or CSXT's Representative.

    B.    Blasting

        1.    Agency or Contractor shall obtain CSXT Representative's and Agency Representative's prior written approval for use of explosives on or adjacent to CSXT property. If permission for use of explosives is granted, Agency or Contractor must

comply with the following:

    a.    Blasting shall be done with light charges under the direct supervision of a responsible officer or employee of Agency or Contractor.

    b.    Electric detonating fuses shall not be used because of the possibility of premature explosions resulting from operation of two-way train radios.

    c.    No blasting shall be done without the presence of an authorized representative of CSXT. At least 10 days' advance notice to CSXTRepresentative is required to arrange for the presence of an authorized CSXT representative and any flagging that CSXT may require.

    d.    Agency or Contractor must have at the Project site adequate equipment, labor and materials, and allow sufficient time, to (i) clean up (at Agency's expense) debris resulting from the blasting without any delay to trains; and (ii) correct (at Agency's expense) any track misalignment or other damage to CSXT's property resulting from the blasting, as directed by CSXT Representative, without delay to trains. If Agency's or Contractor's actions result in delay of any trains, including Amtrak passenger trains, Agency shallbear the entire cost thereof.

    e.    Agency and Contractor shall not store explosives on CSXT property.

  2.    CSXT Representative will:

    a.    Determine the approximate location of trains and advise Agency orContractor of the approximate amount of time available for the blasting operation and clean-up.

    b.    Have the authority to order discontinuance of blasting if, in his or her opinion, blasting is too hazardous or is not in accord with theseSpecial Provisions.

**IX.**    **MAINTENANCE OF DITCHES ADJACENT TO CSXT TRACKS**

Agency or Contractor shall maintain all ditches and drainage structures free of silt or otherobstructions that may result from their operations. Agency or Contractor shall provide erosion control measures during construction and use methods that accord with applicablestate standard specifications for road and bridge construction, including either (1) silt fence; (2) hay or straw barrier; (3) berm or temporary ditches; (4) sediment basin; (5) aggregate checks; and (6) channel lining. All such maintenance and repair of damages dueto Agency's or Contractor's operations shall be performed at Agency's expense.

**X.**    **FLAGGING / INSPECTION SERVICE**

  A.    CSXT has sole authority to determine the need for flagging required to protect its operations and property. In general, flagging protection will be required wheneverAgency or Contractor or their equipment are, or are likely to be, working within fifty (50) feet of live track or other track clearances specified by CSXT, or over tracks.

  B.    Agency shall reimburse CSXT directly for all costs of flagging that is required on account of construction within CSXT property shown in the Plans, or that is covered by an approved plan revision, supplemental agreement or change order.

  C.    Agency or Contractor shall give a minimum of 10 days' advance notice to CSXT Representative for anticipated need for flagging service. No work shall be undertaken until the flag person(s) is/are at the job site. If it is necessary for CSXTto advertise a flagging job for bid, it may take up to 90-days to obtain this service, and CSXT shall not be liable for the cost of delays attributable to obtaining suchservice.

  D.    CSXT shall have the right to assign an individual to the site of the Project to performinspection service whenever, in the opinion of CSXT Representative, such inspection may be necessary. Agency shall reimburse CSXT for the costs incurred by CSXT for such inspection service. Inspection service shall not relieve Agency or Contractor from liability for its Work.

  E.    CSXT shall render invoices for, and Agency shall pay for, the actual pay rate of theflagpersons and inspectors used, plus standard additives, whether that amount is above or below the rate provided in the Estimate. If the rate of pay that is to be usedfor inspector or flagging service is changed before the work is started or during the progress of the work, whether by law or agreement between CSXT and its employees, or if the tax rates on labor are changed, bills will be rendered by CSXTand paid by Agency using the new rates. Agency and Contractor shall perform their operations that require flagging protection or inspection service in such a manner and sequence that the cost of such will be as economical as possible.

**XI.**    **UTILITY FACILITIES ON CSXT PROPERTY**

Agency shall arrange, upon approval from CSXT, to have any utility facilities on or over CSXT Property changed as may be necessary to provide clearances for the proposed trackage.

**XII.**    **CLEAN-UP**

Agency or Contractor, upon completion of the Project, shall remove from CSXT's Property any temporary grade crossings, any temporary erosion control measures used to control drainage, all machinery, equipment, surplus materials, falsework, rubbish, or temporary buildings belonging to Agency or Contractor. Agency or Contractor, upon completion of the Project, shall leave CSXT Property in neat condition, satisfactory to CSXT Representative.

**XIII.**    **FAILURE TO COMPLY**

If Agency or Contractor violate or fail to comply with any of the requirements of these Special Provisions, (a) CSXT may require Agency and/or Contractor to vacate CSXT Property; and (b) CSXT

may withhold monies due Agency and/or Contractor; (c) CSXT may require Agency to withhold monies due Contractor; and (d) CSXT may cure such failure and the Agency shall reimburse CSXT for the cost of curing such failure.

## EXHIBIT D
### INITIAL ESTIMATE ATTACHED
## EXHIBIT E

### PAYMENT SCHEDULE

**Advance  Payment in Full**

Upon execution and delivery of notice to proceed with the Project, Agency will deposit with CSXT a sum equal to the Reimbursable Expenses, as shown by the Estimate.  If CSXT anticipates that it may incur Reimbursable Expenses in excess of the deposited amount, CSXT will request an additional deposit equal to the then remaining Reimbursable Expenses which CSXT estimates that it will incur. CSXT shall request such additional deposit by delivery of invoices to Agency. Agency shall make such additional deposit within 30 days following delivery of such invoice to Agency.

## EXHIBIT F
### INSURANCE REQUIREMENTS

I.     Insurance Policies:

Agency and Contractor, if and to the extent that either is performing work on or about CSXT's property, shall procure and maintain the following insurance policies:

1.  Commercial General Liability coverage at their sole cost and expense with limits of not less than $5,000,000 in combined single limits for bodily injury and/or property damage per occurrence, and such policies shall name CSXT as an additional named insured. The policy shall include endorsement ISO CG 24 17 evidencing that coverage is provided for work within 50 feet of a railroad. If such endorsement is not included, railroad protective liability insurance must be provided as described in item 4 below.
2.  Statutory Worker's Compensation and Employers Liability Insurance with limits of not less than $1,000,000, which insurance must contain a waiver of subrogation against CSXT and its affiliates (if permitted by state law).
3.  Commercial automobile liability insurance with limits of not less than $1,000,000 combined single limit for bodily injury and/or property damage per occurrence, and such policies shall name CSXT as an additional named insured. The policy shall include endorsement ISO CA 20 70 evidencing that coverage is provided for work within 50 feet of a railroad. If such endorsement is not included, railroad protective liability insurance must be provided as described in item 4 below.
4.  Railroad protective liability insurance with limits of not less than $5,000,000 combined single limit for bodily injury and/or property damage per occurrence and an aggregate annual limit of $10,000,000, which insurance shall satisfy the following additional requirements:
    a.  The Railroad Protective Insurance Policy must be on the ISO/RIMA Form of Railroad Protective Insurance - Insurance Services Office (ISO) Form CG 00 35.
    b.  CSX Transportation must be the named insured on the Railroad Protective Insurance Policy.
    c.  Name and Address of Contractor and Agency must appear on the Declarations page.
    d.  Description of operations must appear on the Declarations page and must match the Project description.
    e.  Authorized endorsements must include the Pollution Exclusion Amendment - CG 28 31, unless using form CG 00 35 version 96 and later.
    f.  Authorized endorsements may include:
        (i).     Broad Form Nuclear Exclusion - IL 00 21
        (ii)     30-day Advance Notice of Non-renewal or cancellation
        (iii)    Required State Cancellation Endorsement
        (iv)     Quick Reference or Index - CL/IL 240
    g.  Authorized endorsements may not include:
        (i)      A Pollution Exclusion Endorsement except CG 28 31
        (ii)     A Punitive or Exemplary Damages Exclusion
        (iii)    A "Common Policy Conditions" Endorsement
        (iv)     Any endorsement that is not named in Section 4 (e) or (f) above.
        (v)      Policies that contain any type of deductible
5.  All insurance companies must be A. M. Best rated A- and Class VII or better.
6.  The CSX OP number or CSX contract number, as applicable, must appear on each Declarations page and/or certificates of insurance.
7.  Such additional or different insurance as CSXT may require.

II.   Additional Terms

1.  Contractor must submit the original Railroad Protective Liability policy, Certificates of Insurance and all notices and correspondence regarding the insurance policies to:

Insurance Department CSX
Transportation, Inc.
500 Water Street, 14th Floor
Jacksonville, FL 32202
Phone: 904-366-3804OR
  insurancedocumen
  ts@csx.com
  <mailto:insurance
  documents@csx.c
  om>

2. Neither Agency nor Contractor may begin work on the Project until it has receivedCSXT's written approval of the required insurance.

## SCHEDULE I

<u>CONTRACTOR'S ACCEPTANCE</u>

To and for the benefit of CSX Transportation, Inc. ("CSXT") and to induce CSXT to permitContractor on or about CSXT's property for the purposes of performing work in accordance withthe Agreement dated_, 20_, between Jefferson County, Alabama and CSXT, Contractor hereby agrees to abide by and perform all applicable terms of the Agreement, including, but not limited to Exhibits C and F to the Agreement, and Sections 3, 9 and11 of the Agreement.

Contractor:  _____

By:_____
Name:_____
Title:_____
Date:  _____

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-955
## <u>RESOLUTION</u>

**WHEREAS**, Section 9-15-100 of the Code of Alabama (1975) requires a Property Purchase Disclosure Notice from any government entity that used public funds to purchase real property purchased for any reason; and

**WHEREAS**, Jefferson County has purchased Sanitary Sewer Easements and Temporary Construction Easements for the Memory Lane SSO Abatement Project.

**NOW THEREFORE BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION** that Pursuant to Act 2014-133, p. 248, §1 as Codified in Section 9-15-100 of the Code of Alabama, the attached Property Purchase Disclosure Notice be made part of the minutes of its Commission Meeting and be made an exhibit to this Resolution.

Certification

STATE OF ALABAMA)

JEFFERSON COUNTY)

I, Mildred G. Diliberto, Minute Clerk of the Jefferson County Commission, hereby certify that the above and foregoing is a true and correct copy and/or transcript of a resolution duly adopted and approved by the Jefferson County Commission at its regular meeting held on the 4th day of November, 2021, as same appears and is recorded in Minute Book 175, Page(s) 589-590, of the Official Minutes and Records of said County Commission.

GIVEN, under my hand and seal of Jefferson County, Alabama this the 4th day of November, 2021.

_____
Mildred G. Diliberto
Minute Clerk

Jefferson County Commission
My Commission Expires: <u>August 23, 2023</u>

Property Purchase Disclosure

Memory Lane SSO Abatement Project

Property Purchase Disclosure Act 2014-133

Sanitary Sewer Easement and Temporary Construction Easements were acquired for the Memory Lane SSO Abatement Project in Birmingham, Alabama.  100% Jefferson County funds were used.

There were 3 tracts of property acquired, which are identified herein.

| Tract# | Owner | Property Address | Amount |
|--------|-------|------------------|--------|
| 1 | The City of Birmingham | 2630 Cahaba Road, Birmingham, AL  35209 | $0.00 |
|   | Tract 1 was donated. | | |
| 2. | Union Hill LLC | 400 Union Hill Dr., Birmingham, AL  35209 | $40,000.00 |

The amount of compensation for Tract 2 was determined by Administrative Settlement

| 3. | Birmingham Country Club, Inc. | 3339 County Club Rd., Birmingham, AL  35213 | $0.00 |
|----|-------------------------------|---------------------------------------------|-------|
|    | Tract 3 was donated. | | |

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Resolution be Approved.  **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-956

**RESOLUTION AUTHORIZING CONDEMNATION OF THE FOLLOWING DESCRIBED PROPERTIES FOR THE PUBLIC PURPOSES SPECIFIED;**

BE IT RESOLVED BY THE JEFFERSON COUNTY Commission that the said Commission finds, determines, declares and hereby orders that:

The public interest and necessity require the acquisition, construction and completion by Jefferson County, Alabama of a public improvement, namely the 2021 Five Mile Creek West Force Main Replacement -Tract No. 2. The public interest and necessity require the acquisition of said improvement of the real property, or interest in real property hereinafter described.

It is necessary and in the public interest for Jefferson County, Alabama to construct, install and maintain the 2021 Five Mile Creek West Force Main Replacement -Tract No. 2 in, over, on or under the hereinafter described lands, and the right to remove all improvements, trees, undergrowth and other obstructions situated on said lands, and also the right-to-enter upon said lands for the purpose of constructing, maintaining and repairing the said public improvement constructed or installed thereon, thereover, or thereunder.

That the County Attorney of Jefferson County hereby is, authorized, directed and empowered:

() To prepare, institute and prosecute for and in the name of Jefferson, County Alabama,

condemnation proceedings pursuant to the constitution and statutes of the State of Alabama against the persons hereinafter named and the property hereinafter described and any and all other persons who own or are reputed to own, claim or assert any right, title or interest in or to the herein described property.

() To prepare, secure, execute and file any bonds necessary for security for costs or to

obtain a right-of-entry to said property pending final disposition of said cause, and to appeal from any other of condemnation that may be entered in the Probate Court of Jefferson County, Alabama to the Circuit Court of Jefferson County, Alabama in respect to any parcel in the event any award made in the Probate Court in said cause as to said parcel may in the opinion of this Commission be excessive.

4. The property or interest in property which said County Attorney is by this Resolution

authorized and directed to acquire for said public use is situated in Jefferson County, Alabama and the owner or owners of said property or the claimants of some right, title or interest therein are set out below, each of said individual persons so named being over the age of twenty-one (21) years, a resident of Jefferson County, Alabama and each corporation named being an Alabama Corporation unless otherwise

specifically set out, each said party residing or having its principal place of business at the address set opposite their names.

Said proceedings to acquire and obtain for Jefferson County, Alabama an easement or right-

of-way to install, construct and maintain the 2021 Five Mile Creek West Force Main Replacement -Tract No. 2 in, over, upon or under the following described lands and the right to remove all improvements, trees, undergrowth or other obstruction situated on said property, and the right to prevent any person from placing or maintaining any obstruction of said lands and also the right to enter upon said lands for the purpose or constructing, maintaining, and repairing the public improvements installed or construction on, under, upon said lands described as follows:

**Tract No.2**

**Dan Fagan, Jr. & Alice Marie Fagan**                                       **Fee Simple**
**5350 Freeman Ave.**
**Bessemer, AL 35022**

A sanitary sewer easement of variable widths being more particularly described as follows:

Commence at the Northeast corner of the Northwest ¼ of Section 25, Township 19 South, Range 5 West, a ¼" rebar (bent),  thence run southerly along the east line of said ¼ section for a distance of 17.36 feet; thence turn an angle right 96° 14′ 48″ and run northwesterly for a distance of 77 feet to the Point of Beginning; thence continue northwesterly for a distance of 35.75 feet; thence deflect an angle left 06° 34′ 14″ and run westerly for a distance of 286.36 feet; thence turn an angle left 178° 22′ 31″ and run easterly for a distance of 188.81 feet; thence deflect an angle right 02° 10′ 06″ and continue easterly for a distance of 133.15 feet to the Point of Beginning.

All of said sanitary sewer easement is located in the Northeast ¼ of the Northwest ¼ of Section 25, Township 19 South, Range 5 West, Jefferson County, Alabama, and contains 0.02 acres more or less.

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Resolution be Approved.  **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

---

2021-957
RESOLUTION

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the Commission President be hereby authorized to execute the Agreement with Dana Safety Supply for Patrol Vehicle Upfit: Lightbars, Sirens, Etc. Amount of agreement subject to equipment and installation used as listed on Exhibit A.

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution Alt. be Approved.  **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

---

2021-958

**RESOLUTION OF THE JEFFERSON COUNTY COMMISSION WITH RESPECT TO THE EXPENDITURE OF FUNDS FROM THE INDIGENT CARE FUND PURSUANT TO THE PROVISIONS OF**

### ACT 387 ENACTED AT THE 1966 REGULAR SESSION OF THE ALABAMA LEGISLATURE

WHEREAS, the Jefferson County Commission provides funds to the Jefferson County Sheriff for the operations of the Jefferson County Sheriff's Office; and

WHEREAS, the Jefferson County Sheriff uses said funds to operate the Jefferson County Jails; and

WHEREAS, the Jefferson County Sheriff is required by law to provide medical care and treatment for inmates incarcerated in the Jefferson County Jails; and

WHEREAS, the Jefferson County Sheriff provides medical care and treatment to incarcerated Inmates at medical clinics within Jefferson County Jails and, when necessary, at the outpatient clinics, emergency clinics, in-patient services and at other medical facilities located in Jefferson County; and

WHEREAS, incarcerated inmates to whom the Jefferson County Sheriff provides the aforesaid medical care and treatment include indigent persons of the County suffering from illness, injury, disability, or infirmity; and

WHEREAS, incarcerated inmates to whom the Jefferson County Sheriff provides the aforesaid medical care and treatment at times include indigent persons of the County; and

WHEREAS, the Jefferson County Sheriff has determined the funds allocated by the Jefferson County Commission for the 2022 fiscal year are insufficient for him to provide inpatient medical care and treatment to the aforesaid incarcerated inmates while fulfilling the other duties imposed upon him and his office under federal and state law; and

WHEREAS, the cost to provide for the remainder of FY 2022 in-patient medical care and treatment to the aforesaid incarcerated inmates is $1,899,000.

NOW THEREFORE BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the President is hereby authorized to provide the Jefferson County Sheriff with $1,899,000 in FY2022 from the Indigent Care Fund, defined in and established by Act 387 enacted at the 1966 Regular Session of the Alabama Legislature. These funds shall be solely used to provide medical care and treatment to incarcerated inmates at the Jefferson County Jails who are indigent persons of the County who were provided medical services at medical facilities located in Jefferson County and under contract with the Sheriff. The Sheriff will utilize the same-Indigent eligibility standards as used by Jefferson County, a copy of which is attached hereto as Exhibit A. (on file in the Minute Clerk's Office)
BE IT FURTHER RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the President is hereby authorized to enter into a written agreement with the Jefferson County Sheriff whereby, as a condition of the Jefferson County Sheriff's receipt of the aforesaid $1,899,000 in FY2022 the Sheriff shall agree to maintain documentation to verify which Inmates at the Jefferson County Jails are indigent persons of the County, and shall further agree to re-pay to the Indigent Care Fund any such portion of the aforesaid $1,899,000 in FY2022 not necessary to provide medical care and treatment to Incarcerated inmates at the Jefferson County Jails who are indigent persons of the County.

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Resolution be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

---

2021-959
RESOLUTION

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the Commission hereby acknowledges its receipt of the following described matter approved by Mark Pettway in his capacity as duly elected Sheriff of Jefferson County, Alabama.

Jon Garlick, LPC                $25,000.00
Contract to provide pre-employment psychological screenings for the Sheriff's Office.

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution Alt. be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

---

2021-960
RESOLUTION

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the Commission President be hereby authorized to execute a Public Service Grant in the amount of One Hundred Thousand Dollars ($100,000.00) to the Jefferson County Library Cooperative, Inc. to support the 40 Public Libraries in resource sharing, digital material collections and information technology and assist with the integrated library system (ILS).

STATE OF ALABAMA      )

COUNTY OF JEFFERSON )

## AGREEMENT

WHEREAS, the Jefferson County Commission, as part of its Fiscal Year 2022 budget process, resolved to appropriate funds for general public use purposes within Jefferson County; and

WHEREAS, under this Program, Jefferson County Library Cooperative, Inc., applied for a grant of funds for $100,000.00; and

WHEREAS, Jefferson County Library Cooperative, Inc. ("JCLC"), a non-profit organization, which supports the public libraries of Jefferson County by being a vibrant, collaborative partner and providing access to shared information resources, services and expertise, seeks funding to support its efforts in resource sharing, digital material collection development information technology support and assistance with the integrated library system (ILS), for the 40 public libraries of Jefferson County; and

WHEREAS, the JCLC, serves a public purpose; and

WHEREAS, the Jefferson County Commission has recommended funding of $100,000.00 to the JCLC, and the appropriation of such funds serves a good and sufficient public purpose; and

WHEREAS, the County Commission has determined that it is in the public interest to provide public funds to assist in the development and promotion of said County resources.

NOW THEREFORE, the parties agree as follows:

1.      The term of this Agreement shall begin upon execution hereof and end on October 19, 2022.

2.      The County shall pay to JCLC a lump sum payment of $100,000.00 upon execution of this agreement.

3.      JCLC shall use the public funds to continue being collaborative partner and providing access to shared information resources, services and expertise, to support its efforts in resource sharing, digital material collection development information technology support and assistance with the integrated library system (ILS), for the 40 public libraries of Jefferson County.

ANY PASS-THROUGH FOR OTHER USES OR PURPOSES IS PROHIBITED.

4.      JCLC shall deliver to the Jefferson County Finance Department with a copy to the Jefferson County Manager a detailed report describing the use of the funds and program benefits no later than sixty (60) days following the expenditures or by October 19, 2022, whichever shall occur first.

5.      JCLC  shall create, collect and retain for inspection and copying by the County or its authorized agent or any examiner from the State Department of Public Accounts, all appropriate financial records, including original invoices, canceled checks, cash receipts and all other supporting documents, as may be necessary to prove receipt of said sum from the County and all expenditures thereof.  All such financial records and supporting documents shall be retained and made available by JCLC for a period of not less than three (3) years from termination of the fiscal year set out above.

6.      The JCLC  representative signed below, certifies by the execution of this agreement that no part of the funds paid by the County pursuant to the community grant shall be passed-through to another entity or individual that is not specifically identified or described in the scope of work of this agreement.

7.      The JCLC  representative signed below, certifies by the execution of this agreement that no part of the funds paid by the County pursuant to this agreement nor any part of services, products, or any item or thing of value whatsoever purchased or acquired with said funds shall be paid to, used by, or used in any way whatsoever for the personal benefit of any member or employee of any government whatsoever or family member of any of them, including federal, state, county, and municipal and any agency or subsidiary of any such government; and further certifies that neither JCLC nor any of its officers, partners, owners, agents, representatives, employees or parties in interest in any way colluded, conspired, or connived with any member of the governing body or employee of the governing body of the County or any other public official or public employee, in any manner whatsoever, to secure or obtain this agreement and further certifies that, except as expressly set out in the above, no promise or commitment of

any nature whatsoever of any thing of value whatsoever has been made or communicated to any such governing body member or employee or official as inducement or consideration for this agreement.

8.    Acknowledgement of Funding: If any public recognition is made related to the purpose for which the grant was received, such as in media announcements, marketing materials, advertising, or informational campaigns, grant recipients must acknowledge support from the Jefferson County Commission as a body and not solely the sponsoring Commissioner. Jefferson County should be tagged in all social media mentions regarding County-funded projects and awards.

9.    Any violation of this certification shall constitute a breach and default of this agreement which shall be cause for termination.   Upon such termination JCLC shall immediately refund to the County all amounts paid by the County pursuant to this Agreement.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals or caused this agreement to be executed by their duly authorized representatives on the dates reflected below.

JEFFERSON COUNTY, ALABAMA

_____         _____
Date                                                             James A. Stephens, President
                                                             Jefferson County Commission


                                                             JEFFERSON COUNTY LIBRARY
                                                             COOPERATIVE, INC.

_____         _____
Date                                                             Its:

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved.  **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-961
RESOLUTION

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the Commission President be hereby authorized to execute a JCRIII Grant in the amount of $99,114.00 to assist in upgrading Bryan Elementary's classroom computer technology.

STATE OF ALABAMA       )
COUNTY OF JEFFERSON )

**COMMUNITY INFRASTRUCTURE AGREEMENT**

WHEREAS, the Jefferson County Commission adopted a Community Grant Program, Infrastructure Assistance Program and Jefferson County Rapid Infrastructure Improvement Initiative (JCRIII); and

WHEREAS, under this Program, the Jefferson County Board of Education ("Jefferson County BOE"), applied for a grant of funds for $99,114.00; and

WHEREAS, Jefferson County BOE is a tax exempt, non-profit educational institution which seeks assistance to upgrade Bryan Elementary School's classroom computer technology; and

WHEREAS, Jefferson County BOE meets the eligibility requirements of the Jefferson County Rapid Infrastructure Improvement Initiative; and

WHEREAS, Commissioner Joe Knight has recommended funding of $99,114.00 from the Jefferson County Rapid Infrastructure Improvement (JCRIII) budget, (10% local match funds required per Community Grant Authorizing Resolution AO 18-1, is waived as allowed for JCRIII) to Jefferson County BOE, and the grant of such funds serves a good and sufficient public purpose; and

WHEREAS, the County Commission has determined that it is in the public interest to provide public funds to assist in the development and promotion of said County resources.

NOW THEREFORE, the parties agree as follows:

1.      The term of this Agreement shall begin upon execution hereof and end on November 2, 2022.

2.      The County shall pay to Jefferson County BOE a lump sum payment of $99,114.00 upon execution of this agreement.

3.      Jefferson County BOE shall use the public funds to assist with upgrading Bryan Elementary School's classroom computer technology.

ANY PASS-THROUGH FOR OTHER USES OR PURPOSES IS PROHIBITED.

4.      Jefferson County BOE shall deliver to the Jefferson County Finance Department with a copy to the Jefferson County Manager and the Office of Commissioner Knight a detailed report describing the use of the funds and program benefits no later than sixty (60) days following the expenditures or by November 2, 2022, whichever shall occur first.

5.      Jefferson County BOE shall create, collect and retain for inspection and copying by the County or its authorized agent or any examiner from the State Department of Public Accounts, all appropriate financial records, including original invoices, canceled checks, cash receipts and all other supporting documents, as may be necessary to prove receipt of said sum from the County and all expenditures thereof.  All such financial records and supporting documents shall be retained and made available by Jefferson County BOE, for a period of not less than three (3) years from termination of the fiscal year set out above.

6.      The Jefferson County BOE representative signed below, certifies by the execution of this agreement that no part of the funds paid by the County pursuant to the community grant shall be passed-through to another entity or individual that is not specifically identified or described in the scope of work of this agreement.

7.      The Jefferson County BOE representative signed below, certifies by the execution of this agreement that no part of the funds paid by the County pursuant to this agreement nor any part of services, products, or any item or thing of value whatsoever purchased or acquired with said funds shall be paid to, used by, or used in any way whatsoever for the personal benefit of any member or employee of any government whatsoever or family member of any of them, including federal, state, county, and municipal and any agency or subsidiary of any such government; and further certifies that neither Jefferson County BOE, nor any of its officers, partners, owners, agents, representatives, employees or parties in interest in any way colluded, conspired, or connived with any member of the governing body or employee of the governing body of the County or any other public official or public employee, in any manner whatsoever, to secure or obtain this agreement and further certifies that, except as expressly set out in the above, no promise or commitment of any nature whatsoever of any thing of value whatsoever has been made or communicated to any such governing body member or employee or official as inducement or consideration for this agreement.

8.      Acknowledgement of Funding:  If any public recognition is made related to the purpose for which the grant was received, such as in media announcements, marketing materials, advertising, or informational campaigns, grant recipients must acknowledge support from the Jefferson County Commission as a body and not solely the sponsoring Commissioner. Jefferson County should be tagged in all social media mentions regarding County-funded projects and awards.

9.      Any violation of this certification shall constitute a breach and default of this agreement which shall be cause for termination.   Upon such termination Jefferson County BOE shall immediately refund to the County all amounts paid by the County pursuant to this Agreement.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals or caused this agreement to be executed by their duly authorized representatives on the dates reflected below.

JEFFERSON COUNTY, ALABAMA

_____                    _____
Date                                                                  James A. Stephens, President
                                                                         Jefferson County Commission

JEFFERSON COUNTY BOARD OF
EDUCATION FOR BRYANT ELEMENTARY
SCHOOL

_____          _____
Date                                           Its:

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved.  **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-962
RESOLUTION

**WHEREAS**, in the spring of 2022 Fox Sports in conjunction with the NSFL league Co. LLC will launch the new United States Football League (USFL); and

**WHEREAS**, Birmingham has been presented with the opportunity to serve as the entire League's host city as well as home to the Birmingham Stallions; and

**WHEREAS**, the 8 Team League will be located entirely in Birmingham, and will train and play all of its' games in Birmingham for the inaugural 2022 season; and

**WHEREAS**, this opportunity will benefit Birmingham and the greater Jefferson County area by having an approximate Twenty-one Million and No/100 Dollars ($21,000,000.00) economic exposure value, guaranteed institutional media placement in every national broadcast, a Forty-three Thousand (43,000.00) plus hotel room night occupancy, dining, and utilization of other businesses throughout the Birmingham Metro area; and

**WHEREAS,** the League pledges involvement with the community including partnerships with Boys and Girls Clubs and other educational programs; and

**WHEREAS,** there is an estimated cost anticipated by the Birmingham-Jefferson Convention Complex to host the USFL at approximately Three Million Six Hundred Sixty-four Thousand Nine Hundred Sixty and No/100 Dollars ($3,664,960.00); and

**WHEREAS**, the Commission fully supports the creation and development of the USFL recognizing all of the benefits the league will bring to the citizens of Jefferson County and its huge impact on tourism in the Birmingham-Jefferson County area;

**NOW, THEREFORE, BE IT RESOLVED**, that the Jefferson County Commission hereby extends its support to the Birmingham-Jefferson Convention Complex through a financial commitment in support of its operations regarding hosting the USFL by pledging a financial commitment not to exceed Five Hundred Thousand and No/100 Dollars ($500,000.00), contingent upon the following:

1.    A public meeting held in full compliance with Amendment No. 772 to the Constitution of Alabama (1901)(Section 94.01 of the Recompiled Constitution of Alabama); and

2.    Final approval by the Commission following the public meeting evidenced by adoption of an appropriate resolution consistent therewith.

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Resolution be Approved.  **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-963
RESOLUTION

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the Commission President be hereby authorized to execute Jefferson County Rapid Infrastructure Improvement Initiative (JCRIII) with the City of Warrior for certain road maintenance service from the county to repave Sibleyville Road in Warrior, Alabama with the City of Warrior providing a 10% match..

STATE OF ALABAMA       )
COUNTY OF JEFFERSON )

## COMMUNITY INFRASTRUCTURE AGREEMENT

WHEREAS, the Jefferson County Commission adopted a Community Grant Program, Infrastructure Assistance Program and Jefferson County Rapid Infrastructure Improvement Initiative (JCRIII); and

WHEREAS, under this Program, the City of Warrior ("Warrior") a municipality in Jefferson County, Alabama, applied for an infrastructure grant for certain roadway maintenance services from the county to repave Sibleyville Road, in Warrior, Alabama, identified in the attached Exhibit A.

WHEREAS, Warrior meets the eligibility requirements of Jefferson County Rapid Infrastructure Improvement Initiative (JCRIII), and will provide 10% of the projected cost; and

WHEREAS, Commissioner Joe Knight has recommended funding of $59,850.00 from the Jefferson County Rapid Infrastructure Improvement Initiative (JCRIII) budget, to be used toward repaving Sibleyville Road in Warrior, Alabama, and the grant of such service serves a good and sufficient public purpose; and

WHEREAS, the County Commission has determined that it is in the public interest to assist Warrior and utilize the Jefferson County Roads and Transportation department to repave Sibleyville Road in Warrior, Alabama.

NOW THEREFORE, the parties agree as follows:

**Performance of Work**. The County will cause the Schedule of Work identified by Warrior to be performed by its own forces in compliance with any and all rules, laws and regulations applicable to its undertaking, performance and completion of the Schedule of Work.

Warrior will identify from Exhibit A the specific priorities to be performed by the County in accordance with the limitations of the funds provided by this Agreement.  The County will perform the work by its own forces in compliance with any and all rules, laws and regulations applicable to its undertaking.

**Cost.**   The estimated cost for the proposed Scope of Work is $66,500.00. The actual cost for the scope of work described herein shall not exceed $66,500.00. The Roads and Transportation Department of the County will provide roadway services in accordance with the labor, equipment, and material cost which are attached hereto as Exhibit A. The Jefferson County Roads and Transportation department will be reimbursed for services provided, with Warrior submitting $6,650.00 and the remaining cost of $59,850.00 will come from the Jefferson County Rapid Infrastructure Improvement Initiative (JCRIII) budget and shall be transferred in a lump sum payment to Roads and Transportation upon execution of this agreement Roads and Transportation shall maintain true and accurate books of account and records relating to the cost of the Schedule of Work supported by cancelled checks, vouchers, receipts, certificates, invoices, warrants, purchase orders and similar documentation. The funds allocated to perform the entire scope of work identified in Exhibit. A are insufficient, therefore the county will perform as many services as the allocated funds allow and no more.

**No Inference of Control. Neither the County's execution of this Agreement nor the performance of its undertaking hereunder shall in any way constitute an admission, acceptance, nor indicia of control of the roadways identified in the Schedule of Work.**

**The County does not by these presents assume any risk, liability or any future responsibility or maintenance for the roadways identified in the Schedule of Work.**

**Authority.** Each of the parties hereto does hereby represent and warrant that it has taken all necessary action for the approval of this Agreement and the signature of its representative below has been duly authorized and is binding upon

such party. Each of the parties hereto does further represent and warrant that this Agreement shall be enforceable against each party upon the execution hereof by each party's duly authorized representative.

**Notices.** All notices and other communications required or permitted to be given under this agreement shall be in writing and shall be delivered either by (I) hand delivery (ii) a recognized overnight courier who maintains verification of delivery (deemed to be received on a date of delivered), (iii) United States mail, registered or certified, postage prepaid, return receipt requested (deemed received (3) days after such mailing), or (iv) electronic mail (deemed received on the date sent providing the electronic mail was properly addressed and disclosed the numbers of pages transmitted and that the transmission report produced indicates that each of the pages of the electronic mail were received at the correct account) to each of the respective parties as follows:

If to the City: City of Warrior, Alabama

Attention: Mayor, Johnny Ragland

215 Main St.

Warrior, AL 35180

Copy to: County Manager

Attention: Cal Markert

716 Richard Arrington, Jr., Blvd. N.

Room 260 / Courthouse

Birmingham, AL 35203

Copy to: Jefferson County, Alabama

Attention: Heather Carter, Director

716 Richard Arrington, Jr., Blvd. N.

Room A-200 / Courthouse

Birmingham, AL 35203

carterh@jccal.org <mailto:carterh@jccal.org>

**Governing Law.** The parties agree that this contract is made and entered into Jefferson County, Alabama and that all services, materials and equipment to be rendered pursuant to said Agreement are to be delivered in Jefferson County, Alabama. The interpretation and enforcement of this Agreement will be governed by the laws of the State of Alabama. The parties agree that jurisdiction and venue over all disputes arising under this Agreement shall be the Circuit Court of Jefferson County, Alabama, Birmingham Division.

**Acknowledgement of Funding.** If any public recognition is made related to the purpose for which the grant was received, such as in media announcements, marketing materials, advertising, or informational campaigns, grant recipients must acknowledge support from the Jefferson County Commission as a body and not solely the sponsoring Commissioner. Jefferson County should be tagged in all social media mentions regarding County-funded projects and awards.

**Force Majeure.** The County is not responsible for delays due to causes or occurrences beyond its control including, but not limited to weather, civil disobedience, acts of God, casualty or accident, war, labor disputes, or the like.

**Successors and Assigns.** This Agreement will apply to, be binding in all respects upon, and inure to the benefit of the successors and permitted assigns of the parties.

**No Third Parties Benefited.** This Agreement is made and entered into solely for the benefit of the City and County, their successors and permitted assigns, and no other person or entity shall have rights hereunder.

**Further Assistances.** Each party hereto shall take any and all reasonable actions as may be necessary or appropriate from time to time to effectuate the provisions of this agreement.

**Miscellaneous.** This Agreement supersedes all prior agreements between the parties with the respect to its subject matter and constitutes a complete and exclusive statement of the terms of the agreement between the parties with respect to its subject matter.

**Counterparts.** This Agreement may be executed in any number of counterparts, by original or facsimile signature, each of which shall be deemed and original, but all of which together shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the first date written above.

JEFFERSON COUNTY, ALABAMA
By: _____
President, Jimmie Stephens
Jefferson County Commission

DATE:
CITY OF WARRIOR
BY:_____
Its:_____

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

Approval of the Unusual Demands Report dated 11/4/2021

## JEFFERSON COUNTY COMMISSION
## UNUSUSAL DEMANDS
### 11/4/2021

| | Department | Vendor # | Vendor Name | Description | Amount | Doc # | Batch # |
|---|---|---|---|---|---|---|---|
| 1 | BOARD OF EQUALIZATION | 100193 | JEFFERSON CO TREASURER | UDPC-Carwash Veronica | 15.00 | 393503 | 8023 |
| 2 | BOARD OF EQUALIZATION | 100193 | JEFFERSON CO TREASURER | UDPC-Parking BBJ Award Program Maria | 15.00 | 393537 | 8027 |
| 3 | BOARD OF EQUALIZATION | 100193 | JEFFERSON CO TREASURER | UDPC-Ant Foggers Cleon | 11.66 | 393325 | 7996 |
| 4 | COUNTY MANAGER | 132908 | ASSOCIATION OF COUNTY | ACAA MEMBERSHIP DUES | 375.00 | 393378 | 8014 |
| 5 | COUNTY MANAGER | 134340 | JUSTIN SMITH | SMITH -TRAVEL RECONCILIATION - ICMA - PORTLAND, OR | 360.11 | 393629 | 8036 |
| 6 | DEVELOPMENT SERVICES | 100193 | JEFFERSON CO TREASURER | GREG HOLLIS CAR WASH 9.2021 | 15.00 | 394653 | 8250 |
| 7 | DEVELOPMENT SERVICES | 100193 | JEFFERSON CO TREASURER | SEPTEMBERCARWASHDAVIDFREDERICK | 15.00 | 394636 | 8250 |
| 8 | DEVELOPMENT SERVICES | 100193 | JEFFERSON CO TREASURER | NCAC MONTHLY MEETING 9.2021 LUCIUS THOMAS | 11.38 | 393620 | 8031 |
| 9 | DEVELOPMENT SERVICES | 100193 | JEFFERSON CO TREASURER | CAR WASH JIM MCCOOL 9.2021 | 10.00 | 394656 | 8250 |
| 10 | DEVELOPMENT SERVICES | 100193 | JEFFERSON CO TREASURER | NCAC MONTHLY MEETING 9.2021  JIM MCCOOL | 9.99 | 393624 | 8031 |
| 11 | DEVELOPMENT SERVICES | 100193 | JEFFERSON CO TREASURER | NCAC MONTHLY MEETING 9.2021 JAY CRANE | 9.99 | 393626 | 8031 |
| 12 | DEVELOPMENT SERVICES | 100193 | JEFFERSON CO TREASURER | NCAC MONTHLY MEETING 9.2021 DANNY PHILLIPS | 9.39 | 393619 | 8031 |
| 13 | DEVELOPMENT SERVICES | 100193 | JEFFERSON CO TREASURER | NCAC MONTHLY MEETING 9.2021 DAVID FREDERICK | 9.39 | 393615 | 8031 |
| 14 | DEVELOPMENT SERVICES | 100193 | JEFFERSON CO TREASURER | NCAC MONTHLY MEETING 9.2021 MIKE SMITH | 9.39 | 393613 | 8031 |
| 15 | DEVELOPMENT SERVICES | 100193 | JEFFERSON CO TREASURER | CAR WAS FOR WAYNE TRAMMELL 9.2021 | 8.00 | 394654 | 8250 |
| 16 | DEVELOPMENT SERVICES | 100193 | JEFFERSON CO TREASURER | CAR WASH MANDY ELLEDGE 9.2021 | 8.00 | 394655 | 8250 |
| 17 | DEVELOPMENT SERVICES | 100193 | JEFFERSON CO TREASURER | CAR WASH FOR JAY CRANE 9.2021 | 5.00 | 394657 | 8250 |
| 18 | ESD BARTON LABORATORY | 100193 | JEFFERSON CO TREASURER | TABLES TO DISPLAY LITERATURE & ASSIST CUSTOMERS | 45.92 | 393976 | 8101 |
| 19 | ESD BARTON LABORATORY | 100193 | JEFFERSON CO TREASURER | RESIDUAL NITRATE TEST STRIP TESTING AT HOOVER ODOR | 9.99 | 393985 | 8101 |
| 20 | ESD CAHABA RIVER WWTP | 100193 | JEFFERSON CO TREASURER | A/C PARTS, DUCT WORK TO REPAIR A/C IN OLD ADMIN BU | 516.72 | 394250 | 8149 |
| 21 | ESD CAHABA RIVER WWTP | 100193 | JEFFERSON CO TREASURER | PAINT BRUSHES FOR PAINTING FLOOR AT CAHABA RIVER W | 42.13 | 394639 | 8251 |
| 22 | ESD CAHABA RIVER WWTP | 100193 | JEFFERSON CO TREASURER | JEFFERSON COUNTY CELL PHONE CHARGER | 24.97 | 393616 | 8032 |
| 23 | ESD GENERAL ADMINISTRATION | 100193 | JEFFERSON CO TREASURER | REIMB-NIEMEYER-2022 ASCE MEMBERSHIP & SECTION DUES | 275.00 | 393960 | 8096 |
| 24 | ESD GENERAL ADMINISTRATION | 100193 | JEFFERSON CO TREASURER | ENGINEER AND LAND SURVEYOR CERTIFICATION | 100.00 | 394203 | 8143 |
| 25 | ESD GENERAL ADMINISTRATION | 100193 | JEFFERSON CO TREASURER | REIMB-C.HAYDEN-AL PROF.ENGINEERING LICENSE | 100.00 | 394528 | 8226 |
| 26 | ESD GENERAL ADMINISTRATION | 100193 | JEFFERSON CO TREASURER | REIMB-S.NIEMEYER-AL PROF ENGINEER LICENSE | 100.00 | 394280 | 8159 |
| 27 | ESD GENERAL ADMINISTRATION | 100193 | JEFFERSON CO TREASURER | REIMB--S.NIEMEYER--09/2021 CARWASH | 14.95 | 392477 | 7858 |

| 28 | ESD GENERAL ADMINISTRATION | 100193 | JEFFERSON CO TREASURER | PETTY CASH REIMB-D.DENARD-TRAVEL MI.&PARKING | 7.52 | 393242 | 7980 |
| 29 | ESD LEEDS WWTP | 100193 | JEFFERSON CO TREASURER | Channel for filter | 265.00 | 392859 | 7929 |
| 30 | ESD LEEDS WWTP | 100193 | JEFFERSON CO TREASURER | Certification renewal fee | 70.00 | 393004 | 7946 |
| 31 | ESD PUMP STATIONS | 100193 | JEFFERSON CO TREASURER | screws mat saw ball bearings drive shafts | 462.33 | 394320 | 8178 |
| 32 | ESD PUMP STATIONS | 100193 | JEFFERSON CO TREASURER | 24v New starter for cunningham #2 ps | 415.00 | 394929 | 8296 |
| 33 | ESD PUMP STATIONS | 100193 | JEFFERSON CO TREASURER | keys, edgewater oaks fence biofilter bearings | 352.46 | 394319 | 8177 |
| 34 | ESD SEWER BILLING | 141708 | KRISTEN EDWARDS | REFUND OVERPAYMENT ACCT# L 5 - 11400 | 91.89 | 393783 | 8062 |
| 35 | ESD SEWER BILLING | 141709 | CRAIG JOHNSON | REFUND OVER PAYMENT ACCT# W 0 - 146413 | 43.51 | 393785 | 8062 |
| 36 | ESD SEWER BILLING | 141710 | ANDREA BROCK | REFUND OVERPAYMENT ACCT# W 0 - 58514 | 182.16 | 393801 | 8062 |
| 37 | ESD SEWER BILLING | 141711 | BEATRICE MARTINEZ | REFUND OVERPAYMENT ACCT# W 0 - 148587 | 2456.53 | 393835 | 8062 |
| 38 | ESD SEWER BILLING | 141712 | TERRY & DEBBIE MAYFIELD | REFUND OVERPAYMENT ACCT# R 1000 - 281 | 87.70 | 393810 | 8062 |
| 39 | ESD SEWER BILLING | 141713 | MARY CARTER | REFUND OVERPAYMENT ACCT# W 0 - 70259 | 206.95 | 393811 | 8062 |
| 40 | ESD SEWER BILLING | 141715 | ANTHONY HARRIS | REFUND OVERPAYMENT ACCT# I 4 - 16030 | 160.34 | 393814 | 8062 |
| 41 | ESD SEWER BILLING | 141724 | L H VANDERGRIFT | REFUND OVERPAYMENT ACCT# L 5 - 24100 | 30.78 | 394633 | 8062 |
| 42 | ESD SEWER BILLING | 141732 | BOBBY METTETAL | REFUND OVERPAYMENT ACCT# L 17 - 51140 | 158.17 | 394635 | 8062 |
| 43 | ESD SEWER BILLING | 141741 | JOHN PATTERSON | REFUND OVERPAYMENT ACCT# L 14 - 13200 | 12.33 | 394735 | 8062 |
| 44 | ESD SEWER BILLING | 141742 | WILMA HSU | REFUND OVERPAYMENT ACCT# I 4 - 23790 | 110.08 | 394741 | 8062 |
| 45 | ESD SEWER BILLING | 141744 | LINDA HALL & JESSICA | REFUND OVERPAYMENT ACCT# W 0 - 102206 | 87.37 | 394769 | 8062 |
| 46 | ESD SEWER LINE CONSTRUCTION | 100193 | JEFFERSON CO TREASURER | TRAILER LANDING LEG, ZOYSIA SOD | 353.00 | 392384 | 7815 |
| 47 | ESD SEWER LINE CONSTRUCTION | 100193 | JEFFERSON CO TREASURER | ROPE, PULLEYS, AIR CHUCK & GAUGE, FUSES & WHEEL CH | 213.05 | 393432 | 8018 |
| 48 | ESD SEWER LINE CONSTRUCTION | 100193 | JEFFERSON CO TREASURER | PVC PLUG, RUB BOOTS, WELD HELMENT, AIR LINE CONN. | 98.12 | 392387 | 7816 |
| 49 | ESD SEWER LINE CONSTRUCTION | 100193 | JEFFERSON CO TREASURER | PIPE SAW SCREW ASSEMBLY | 22.49 | 394142 | 8128 |
| 50 | ESD SEWER SURVEY | 100193 | JEFFERSON CO TREASURER | DRILL,BATTERY,FILTER,GREASE | 175.96 | 393770 | 8059 |
| 51 | ESD TURKEY CREEK WWTP | 100193 | JEFFERSON CO TREASURER | gate operator for front gate Turkey | 643.50 | 393201 | 7973 |
| 52 | ESD TURKEY CREEK WWTP | 100193 | JEFFERSON CO TREASURER | shop vac filter, rodent killer, tape, batteries | 240.62 | 393193 | 7973 |
| 53 | ESD TURKEY CREEK WWTP | 100193 | JEFFERSON CO TREASURER | Operator certification renewal | 70.00 | 393198 | 7973 |
| 54 | ESD TURKEY CREEK WWTP | 100193 | JEFFERSON CO TREASURER | long handle scrub brush | 39.46 | 393191 | 7973 |
| 55 | ESD TURKEY CREEK WWTP | 100193 | JEFFERSON CO TREASURER | Fuses fot Turkey Creek | 32.21 | 393211 | 7973 |
| 56 | ESD TURKEY CREEK WWTP | 100193 | JEFFERSON CO TREASURER | fuses for Turkey Creek | 28.95 | 393212 | 7973 |
| 57 | ESD TURKEY CREEK WWTP | 100193 | JEFFERSON CO TREASURER | Air conditioner belts | 19.64 | 393196 | 7973 |
| 58 | ESD VALLEY CREEK WWTP | 100193 | JEFFERSON CO TREASURER | keys, tags, hoses, water, glasses, sanding belts | 1487.43 | 392545 | 7877 |
| 59 | ESD VALLEY CREEK WWTP | 100193 | JEFFERSON CO TREASURER | key, gauges, switch, valve, drill bit, postage, | 1146.31 | 393961 | 8097 |
| 60 | ESD VILLAGE CREEK WWTP | 100193 | JEFFERSON CO TREASURER | For various uses throughout the plant. | 449.00 | 394519 | 8224 |
| 61 | ESD VILLAGE CREEK WWTP | 100193 | JEFFERSON CO TREASURER | Skimmers to clean out the basins throughout plant. | 375.68 | 394619 | 8246 |
| 62 | ESD VILLAGE CREEK WWTP | 100193 | JEFFERSON CO TREASURER | Waders to wear while cleaning influent channels. | 339.96 | 393817 | 8070 |
| 63 | ESD VILLAGE CREEK WWTP | 100193 | JEFFERSON CO TREASURER | Utility tools to repair influent channels on 001 | 145.05 | 393813 | 8068 |
| 64 | ESD VILLAGE CREEK WWTP | 100193 | JEFFERSON CO TREASURER | supplies to seal water lines on influent pump 7. | 130.46 | 394532 | 8227 |
| 65 | ESD VILLAGE CREEK WWTP | 100193 | JEFFERSON CO TREASURER | Supplies to repair handrails at the 002 clarifiers | 91.62 | 393847 | 8076 |
| 66 | ESD VILLAGE CREEK WWTP | 100193 | JEFFERSON CO TREASURER | Paint to label gas and diesel tanks. | 82.89 | 394620 | 8248 |
| 67 | ESD VILLAGE CREEK WWTP | 100193 | JEFFERSON CO TREASURER | Drano and acid to clear drains throughout the plan | 76.72 | 394100 | 8115 |
| 68 | ESD VILLAGE CREEK WWTP | 100193 | JEFFERSON CO TREASURER | Extra keys made for the new supervisor. | 8.00 | 393815 | 8069 |
| 69 | ESD VILLAGE CREEK WWTP | 100193 | JEFFERSON CO TREASURER | Jack bolts to repair raw pumps. | 6.00 | 393856 | 8078 |
| 70 | PERSONNEL BOARD TESTING | 119443 | WAN CARLOS THORPE | Assessor Reimb 09/26/21 - 10/01/21 - W Thorpe | 644.68 | 394407 | 8190 |

| 71 | PERSONNEL BOARD TESTING | 119546 | KIRK GILES | Assessor Reimb 09/26/21 - 10/01/21 - K Giles | 125.00 | 394395 | 8190 |
| 72 | PERSONNEL BOARD TESTING | 127451 | KENNETH MILLER | Assessor Reimb 09/26/21 - 10/01/21 - K Miller | 250.26 | 394399 | 8190 |
| 73 | PERSONNEL BOARD TESTING | 129413 | REGINALD GRIGSBY | Assessor Reimb 09/12-17/21 Police Lt - R Grigsby | 205.10 | 394431 | 8183 |
| 74 | PERSONNEL BOARD TESTING | 132335 | MANUEL RODRIGUEZ | Assessor Reimb 09/26/21 - 10/01/21 - M Rodriguez | 180.53 | 394403 | 8190 |
| 75 | PERSONNEL BOARD TESTING | 133529 | RICH HILLIARD | Assessor Reimb 09/12-17/21 Police Lt - R Hilliard | 158.60 | 394432 | 8183 |
| 76 | PERSONNEL BOARD TESTING | 136649 | SUZANNE WOODLAND | Assessor Reimb 09/26/21 - 10/01/21 - S Woodland | 151.88 | 394428 | 8190 |
| 77 | PERSONNEL BOARD TESTING | 136712 | KEVIN NEWMAN | Assessor Reimb 09/26/21 - 10/01/21 - K Newman | 125.00 | 394401 | 8190 |
| 78 | PERSONNEL BOARD TESTING | 138562 | CHERYL KOVACIC | Assessor Reimb 09/12-17/21 Police Lt - C Kovacic | 200.04 | 394433 | 8183 |
| 79 | PERSONNEL BOARD TESTING | 141716 | DENNIS SALLAS | Assessor Reimb 09/12-17/21 Police Lt - D Sallas | 125.00 | 394437 | 8183 |
| 80 | PERSONNEL BOARD TESTING | 141717 | TAURUS NOLEN | Assessor Reimb 09/12-17/21 Police Lt - T Nolen | 388.20 | 394435 | 8183 |
| 81 | PERSONNEL BOARD TESTING | 141718 | ANGELA LANE | Assessor Reimb 09/12-17/21 Police Lt - A Lane | 350.22 | 394434 | 8183 |
| 82 | PERSONNEL BOARD TESTING | 141719 | LAWRENCE BROWN | Reimb. Assessor L Brown Police Lt. Dev 09/12-17/21 | 125.00 | 394370 | 8183 |
| 83 | PERSONNEL BOARD TESTING | 141734 | TERI UNO | Assessor Reimb 09/26/21 - 10/01/21 - T. Uno | 125.00 | 394427 | 8190 |
| 84 | PERSONNEL BOARD TESTING | 141715 | ULYSSES HENDERSON | Assessor Reimb 09/26/21 - 10/01/21 - U. Henderson | 578.04 | 394397 | 8190 |
| 85 | PERSONNEL BOARD TRAINING | 100193 | JEFFERSON CO TREASURER | Mileage Reimb. P Blank July - Sept 2021 | 88.48 | 394286 | 8165 |
| 86 | PERSONNEL BOARD TRAINING | 100193 | JEFFERSON CO TREASURER | Mileage Reimb. G. Bone Sept. 16-23, 2021 | 73.92 | 394290 | 8168 |
| 87 | PERSONNEL BOARD TRAINING | 100193 | JEFFERSON CO TREASURER | Mileage Reimb. M Glaze August 2 - Sept. 23, 2021 | 63.28 | 394287 | 8166 |
| 88 | PERSONNEL BOARD TRAINING | 100193 | JEFFERSON CO TREASURER | Mileage Reimb. K. Robinson Sept. 20 - 23, 2021 | 55.33 | 394294 | 8171 |
| 89 | PERSONNEL BOARD TRAINING | 100193 | JEFFERSON CO TREASURER | Mileage Reimb. A. Russell Sept. 20-23, 2021 | 40.88 | 394292 | 8170 |
| 90 | PERSONNEL BOARD TRAINING | 100193 | JEFFERSON CO TREASURER | Mileage Reimb. M. Glaze for Sept. 23, 2021 | 11.76 | 394288 | 8166 |
| 91 | RDS & TRANS OPERATIONS | 100193 | JEFFERSON CO TREASURER | BERMUDA SOD | 310.00 | 393944 | 8090 |
| 92 | RDS & TRANS OPERATIONS | 100193 | JEFFERSON CO TREASURER | BERMUDA SOD | 144.00 | 394275 | 8156 |
| 93 | REVENUE | 100193 | JEFFERSON CO TREASURER | PETTY CASH REIMB KEONA NIXON | 49.50 | 393053 | 7950 |
| 94 | REVENUE | 100193 | JEFFERSON CO TREASURER | LOC MIL REIMB FOR AFRA GOODEN DATED 09/27,09/29 | 14.56 | 393043 | 7949 |
| 95 | ROADS AND TRANS HWY MNT | 100193 | JEFFERSON CO TREASURER | Drill Bit, 2X4 | 318.90 | 393728 | 8049 |
| 96 | ROADS AND TRANS MNT KET | 100193 | JEFFERSON CO TREASURER | Cleaning Supplies for Administration Bldg | 19.75 | 394373 | 8186 |
| 97 | ROADS AND TRANS RIGHT OF WAY | 100193 | JEFFERSON CO TREASURER | Petty cash expenses | 81.00 | 393310 | 7995 |
| 98 | SF CORRECTIONS-BS | 100193 | JEFFERSON CO TREASURER | POSTAGE/BOND PROBATED/GLOVES,VENT,CLAMPS | 215.75 | 394271 | 8153 |
| 99 | SF ENFORCEMENT - BHAM | 100193 | JEFFERSON CO TREASURER | POSTAGE/BOND PROBATED/GLOVES,VENT,CLAMPS | 215.75 | 394271 | 8153 |
| 100 | SF ENFORCEMENT - BHAM | 100193 | JEFFERSON CO TREASURER | PARKING/FERTILIZER/FLY TRAP/CHAIN/OIL/HEAT SHRINK | 141.42 | 394274 | 8155 |
| 101 | SF ENFORCEMENT - BHAM | 100193 | JEFFERSON CO TREASURER | CABLE TIE,FUEL FILLER FILTERS,OIL DRAIN PARTS | 125.69 | 394862 | 8279 |
| 102 | SF ENFORCEMENT - BHAM | 100193 | JEFFERSON CO TREASURER | TRVL REIMBURSEMENT K MORGAN | 70.30 | 392434 | 7831 |
| 103 | SF ENFORCEMENT - BHAM | 100193 | JEFFERSON CO TREASURER | TRVL REIMBURSEMENT WILLIAM POWELL | 14.34 | 394839 | 8274 |
| 104 | SF ENFORCEMENT - BHAM | 100193 | JEFFERSON CO TREASURER | TRVL REIMBURSEMENT CHARLES N ROBERTS | 4.16 | 394840 | 8274 |
| 105 | SF ENFORCEMENT - BHAM | 100193 | JEFFERSON CO TREASURER | TRVL REIMBURSEMENT J MONEY | 1.03 | 394843 | 7831 |
| | **Grand Total** | | | | **$19,395.57** | | |

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Unusual Demands Report be Approved.  **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-964
RESOLUTION

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the Purchasing Division Agenda Report for the weeks of  10/07/2021 - 10/13/2021 and 10/14/2021 - 10/20/2021, be hereby approved as presented.

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Purchasing Division Agenda Reports be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-965
RESOLUTION

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the Purchasing Exceptions Report for the weeks of 10/07/2021 - 10/13/2021 and 10/14/2021 - 10/20/2021, be hereby approved as presented.

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Purchasing Exceptions Reports be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-966
RESOLUTION

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the Encumbrance Report for the weeks of 10/07/2021 - 10/13/2021 and 10/14/2021 - 10/20/2021, be hereby approved as presented.

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Encumbrance Reports be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-967
RESOLUTION

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the Commission does hereby ratify the following bank statements:

Jefferson Credit Union Statement for Closing Date October 3, 2021

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Resolution be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-968
**RESOLUTION**

**BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION** that the  Commission President be hereby authorized to execute a PACA Intergovernmental Agreement between Jefferson, County, Alabama and Clay County Schools to establish partnership with the Jefferson County Regional Purchasing Cooperative also referred to as the Purchasing Association of Alabama (PACA). PACA partners may purchase for PACA designated contracts on an "as needed" basis.  PACA partners are fiscally and logistically responsible for their own purchases..

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-969
**RESOLUTION**

**BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION** that the  Commission President be hereby authorized to execute a PACA Intergovernmental Agreement between Jefferson, County, Alabama and Sylacauga City Schools to establish partnership with the Jefferson County Regional Purchasing Cooperative also referred t as the Purchasing Association of Alabama (PACA). PACA partners may purchase for PACA designated contracts on an "as needed" basis.  PACA partners are fiscally and logistically responsible for their own purchases..

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-970
**RESOLUTION**

**BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION** that the  Commission President be hereby authorized to execute a PACA Intergovernmental Agreement between Jefferson County, Alabama and Alexander City Schools to establish partnership with the Jefferson County Regional Purchasing Cooperative also referred to as the Purchasing Association of Alabama (PACA). PACA partners may purchase for PACA designated contracts on an "as needed" basis.  PACA partners are fiscally and logistically responsible for their own purchases.

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

Approval of the Travel/Staff Development dated 11/4/2021, as follows:

### MULTIPLE STAFF DEVELOPMENT

**Revenue**
| | |
|---|---|
| Anthonette D. Dotson | 918.86 |
| Menisha Baldwin | 851.58 |
| Charles P Bell | 824.10 |

2021 AMROA Winter Conference
Auburn, AL -December 8-10,2021

| | |
|---|---|
| Scott Herron | 150.00 |
| Bonita Brown | 150.00 |
| Antonia Davis | 150.00 |
| Tracie Swanson | 150.00 |
| Isadore McGee | 150.00 |
| Adnrina Hines | 150.00 |
| Darenetria Dean | 150.00 |
| Ashley Heard | 150.00 |
| Randy Dodd | 150.00 |

Alabama Licensing Officials Conference
Prattville, AL -December 8-9, 2021

### INDIVIDUAL STAFF DEVELOPMENT

**Community Development**

Frederick Hamilton                                         3,010.30
International Economic Development
Nashville, TN -October 1-5, 2021

**Environmental Services**

David Denard                                              1,373.18
NACWA 2021 Fall Strategic Leadership & Board of Directors
Meeting
Charleston, SC -November 14-17, 2021

**Revenue**

Isadore McGee                                             200.00
C2110910 2021 CRE Update
Millbrook, AL -September 10, 2021

Tasha Cooley                                              150.00
CGAT -Billing/ Accounting Receivable
Tuscaloosa, AL – November 3, 2021

Satonya Marhoon                                           150.00
CGAT-Billings/Accounting Receivable
Tuscaloosa, AL – November 3, 2021

Satonya Marhoon                                           150.00
CGAT -Payroll
Tuscaloosa, AL – January 19, 2022

Carley Sims                                               330.00
CRE: Sales & Use Tax Examination-Legal Environment
Opelika, AL -November 3-5, 2021

Wiley E Stodenmine                                        330.00
CRE 1: Sales and Use Tax Examination (Online)
Birmingham, AL -November 3-5, 2021

**Security**

Melvin Grigsby                                            957.38
Master Instructor Development Program
Talladega, AL -October 26-28, 2021

**FOR INFORMATION ONLY**

**Personnel**
Brian Godfrey                                        800.00
HCM Fundamentals-Learn Remote
Birmingham, AL -June 1-2, 2021

**Sheriff**
Nickolas Andrews                                    1,494.70
SSGT Vanguard Level 1
Anniston, AL -November 8-12, 2021

Nickolas Andrews                                    1,494.70
SSGT Vanguard Level 2
Anniston, AL -November 15-19, 2021

Deonte T. Washington                                700.00
SSGT Vanguard Level 2
Hoover, AL – February 14-18, 2022

Deonte T. Washington                                700.00
SSGT Vanguard Level 1
Hoover, AL – February 7-11, 2022

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Staff Development Report be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

Zoning Case Z-21-0018 Attic Plus A General Partnership, owner; David Rawson, agent requests a change of zoning from R-1 (Single Family) to C-1 (Commercial) for an addition to a mini-warehouse business. Case Carried-Over until November 18, 2021, in order to give the residents enough notice.

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Zoning Item - County Commission be Carried Over. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-971
RESOLUTION

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the Commission President be hereby authorized to execute an agreement between Jefferson County, Alabama and Buffalo Rock Company for the purpose of furnishing concessions, catering and vending services to the Jefferson County Commission.

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-972
RESOLUTION

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that, in line with the contract between Jefferson County and Buffalo Rock Company, Inc. (Proposal No. 80-21) awarding exclusive right for vending services in County buildings to Buffalo Rock for a period of three years, the distribution of revenue from vending services will be as follows:

1.    In all public locations, the revenue derived from vending services shall be deposited in the Jefferson County General Fund.
2.    In all non-public (employee only)  locations, revenue from vending services will be disbursed to that location's employee fund for use for all lawful purposes.
      Following is the distribution list:

          Jefferson County Commission/General Services
          Jefferson County Commission/Environmental Services
          Jefferson County Commission/Roads and Transportation
          Jefferson County Commission/Birmingham Fleet
          Jefferson County Commission/Family Court

Jefferson County Commission/Sheriff's Department
Personnel Board of Jefferson County

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Resolution be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-973
RESOLUTION

**WHEREAS**, the Jefferson County Commission met on September 23, 2021, and adopted Resolution No. 816, recorded in Minute Book 175, Page 522 which provides for the Stop Loss Health Insurance policy for County employees; and

**WHEREAS**, Resolution No. 816 contained a typographical error in the stated rate table; and

**WHEREAS**, the County and Blue Cross Services desire to accurately record the correct rates.

**NOW THEREFORE BE IT RESOLVED**, by the Jefferson County Commission that the rate table listed in Resolution No. 816 be hereby repealed and replaced with the rates below which were approved in the policy for Fiscal Year 2022. Monthly insurance premium rates per employee per month are as follows for Fiscal Year 2022:

| COVERAGE PLAN | RATE PER EMPLOYEE PER MONTH |
|---|---|
| Employee | $ 16.35 |
| Employee plus Dependent | $ 46.61 |
| Employee plus Family | $ 46.61 |

All other terms and conditions remain the same.

Motion was made by Commissioner Lashunda Scales and seconded by Commissioner Sheila Tyson that the Resolution be Approved. **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-974
RESOLUTION

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the Commission President be hereby authorized to execute a Community Grant Program Agreement between Jefferson County, Alabama and Vestavia Hills High School Habitat for Humanity Club in the amount of $5,000.00, to assist with building homes in the greater Birmingham area.

STATE OF ALABAMA     )
COUNTY OF JEFFERSON )

**COMMUNITY GRANT PROGRAM**

WHEREAS, the Jefferson County Commission adopted a Community Grant Program and Funding Guidelines ("Program"); and

WHEREAS, under this Program, the Vestavia Hills Board of Education ("Vestavia Hills BOE"), applied for a grant of funds for $5,000.00; and

WHEREAS, Vestavia Hills BOE is a non-profit, public, educational institution seeking funding for Vestavia Hills High School Habitat for Humanity Club to assist with building homes in the greater Birmingham area; and

WHEREAS, Vestavia Hills BOE meets the eligibility requirements of the Program; and

WHEREAS, Commissioner Steve Ammons has recommended funding of $5,000.00 to Vestavia Hills BOE, and the grant of such funds serves a good and sufficient public purpose; and

WHEREAS, the County Commission has determined that it is in the public interest to provide public funds to assist in the development and promotion of said County resources.

NOW THEREFORE, the parties agree as follows:

1.      The term of this Agreement shall begin upon execution hereof and end on November 2, 2022.

2.      The County shall pay to Vestavia Hills BOE a lump sum payment of $5,000.00 upon execution of this agreement.

3.      Vestavia Hills BOE shall use the public funds of $5,000.00, to assist Vestavia Hills High School Habitat for Humanity Club to assist with building homes in the greater Birmingham area.

ANY PASS-THROUGH FOR OTHER USES OR PURPOSES IS PROHIBITED.

4.      Vestavia Hills BOE shall deliver to the Jefferson County Finance Department with a copy to the Jefferson County Manager and the Office of Commissioner Ammons a detailed report describing the use of the funds and program benefits no later than sixty (60) days following the expenditures or by November 2, 2022 whichever shall occur first.

5.      Vestavia Hills BOE shall create, collect and retain for inspection and copying by the County or its authorized agent or any examiner from the State Department of Public Accounts, all appropriate financial records, including original invoices, canceled checks, cash receipts and all other supporting documents, as may be necessary to prove receipt of said sum from the County and all expenditures thereof.  All such financial records and supporting documents shall be retained and made available by Vestavia Hills BOE, for a period of not less than three (3) years from termination of the fiscal year set out above.

6.      The Vestavia Hills BOE representative signed below, certifies by the execution of this agreement that no part of the funds paid by the County pursuant to the community grant shall be passed-through to another entity or individual that is not specifically identified or described in the scope of work of this agreement.

7.      The Vestavia Hills BOE representative signed below, certifies by the execution of this agreement that no part of the funds paid by the County pursuant to this agreement nor any part of services, products, or any item or thing of value whatsoever purchased or acquired with said funds shall be paid to, used by, or used in any way whatsoever for the personal benefit of any member or employee of any government whatsoever or family member of any of them, including federal, state, county, and municipal and any agency or subsidiary of any such government; and further certifies that neither Vestavia Hills BOE, nor any of its officers, partners, owners, agents, representatives, employees or parties in interest in any way colluded, conspired, or connived with any member of the governing body or employee of the governing body of the County or any other public official or public employee, in any manner whatsoever, to secure or obtain this agreement and further certifies that, except as expressly set out in the above, no promise or commitment of any nature whatsoever of any thing of value whatsoever has been made or communicated to any such governing body member or employee or official as inducement or consideration for this agreement.

8.      Acknowledgement of Funding:  If any public recognition is made related to the purpose for which the grant was received, such as in media announcements, marketing materials, advertising, or informational campaigns, grant recipients must acknowledge support from the Jefferson County Commission as a body and not solely the sponsoring Commissioner. Jefferson County should be tagged in all social media mentions regarding County-funded projects and awards.

9.      Any violation of this certification shall constitute a breach and default of this agreement which shall be cause for termination.   Upon such termination Vestavia Hills BOE shall immediately refund to the County all amounts paid by the County pursuant to this Agreement.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals or caused this agreement to be executed by their duly authorized representatives on the dates reflected below.

JEFFERSON COUNTY, ALABAMA

_____          _____
Date                                                      James A. Stephens, President
                                                       Jefferson County Commission

                                                       VESTAVIA HILLS BOARD OF EDUCATION
                                                       FOR VESTAVIA HILLS HIGH SCHOOL

_____          _____
Date                                                      Its:

Motion was made by Commissioner Steve Ammons and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved.  **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

2021-975
RESOLUTION

BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION that the Commission President be hereby authorized to execute of a Community Grant Program Agreement with Mountain Brook City School Foundation in the amount of $5,000.00, to support the professional development, technology, and library enhancements.

STATE OF ALABAMA       )
COUNTY OF JEFFERSON )

## COMMUNITY GRANT PROGRAM

WHEREAS, the Jefferson County Commission adopted a Community Grant Program and Funding Guidelines ("Program"); and

WHEREAS, under this Program, the Mountain Brook City Schools Foundation, ("MBCSF"), applied for a grant of funds for $5,000.00; and

WHEREAS, MBCSF is a 501(c)(3) organization, seeking funding for professional development, technology and library enhancements for Mountain Brook City Schools; and

WHEREAS, MBCSF meets the eligibility requirements of the Program; and

WHEREAS, Commissioner Steve Ammons has recommended funding of $5,000.00 to MBCSF, and the grant of such funds serves a good and sufficient public purpose; and

WHEREAS, the County Commission has determined that it is in the public interest to provide public funds to assist in the development and promotion of said County resources.

NOW THEREFORE, the parties agree as follows:

1.      The term of this Agreement shall begin upon execution hereof and end on November 2, 2022.

2.      The County shall pay to MBCSF a lump sum payment of $5,000.00 upon execution of this agreement.

3.      MBCSF shall use the public funds for professional development, technology and library enhancements for Mountain Brook Schools.

ANY PASS-THROUGH FOR OTHER USES OR PURPOSES IS PROHIBITED.

4.      MBCSF shall deliver to the Jefferson County Finance Department with a copy to the Jefferson County Manager and to the Office of Commissioner Ammons a detailed report describing the use of the funds and program benefits no later than sixty (60) days following the expenditures or by November 2, 2022, whichever shall occur first.

5.      MBCSF shall create, collect and retain for inspection and copying by the County or its authorized agent or any examiner from the State Department of Public Accounts, all appropriate financial records, including original invoices, canceled checks, cash receipts and all other supporting documents, as may be necessary to prove receipt of said sum from the County and all expenditures thereof.  All such financial records and supporting documents shall be retained and made available by MBCSF for a period of not less than three (3) years from termination of the fiscal year set out above.

6.      The MBCSF representative signed below, certifies by the execution of this agreement that no part of the funds paid by the County pursuant to the community grant shall be passed-through to another entity or individual that is not specifically identified or described in the scope of work of this agreement.

7.      The MBCSF representative signed below, certifies by the execution of this agreement that no part of the funds paid by the County pursuant to this agreement nor any part of services, products, or any item or thing of value whatsoever purchased or acquired with said funds shall be paid to, used by, or used in any way whatsoever for the personal benefit of any member or employee of any government whatsoever or family member of any of them, including federal, state, county, and municipal and any agency or subsidiary of any such government; and further certifies that neither MBCSF, nor any of its officers, partners, owners, agents, representatives, employees or parties in interest in any way colluded, conspired, or connived with any member of the governing body or employee of the governing body of the County or any other public official or public employee, in any manner whatsoever, to secure or

obtain this agreement and further certifies that, except as expressly set out in the above, no promise or commitment of any nature whatsoever of any thing of value whatsoever has been made or communicated to any such governing body member or employee or official as inducement or consideration for this agreement.

8.    Acknowledgement of Funding: If any public recognition is made related to the purpose for which the grant was received, such as in media announcements, marketing materials, advertising, or informational campaigns, grant recipients must acknowledge support from the Jefferson County Commission as a body and not solely the sponsoring Commissioner. Jefferson County should be tagged in all social media mentions regarding County-funded projects and awards.

9.    Any violation of this certification shall constitute a breach and default of this agreement which shall be cause for termination.   Upon such termination MBCSF shall immediately refund to the County all amounts paid by the County pursuant to this Agreement.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals or caused this agreement to be executed by their duly authorized representatives on the dates reflected below.

JEFFERSON COUNTY, ALABAMA

_____          _____
Date                                                    James A. Stephens, President
                                                     Jefferson County Commission

MOUNTAIN BROOK CITY SCHOOLS FOUNDATION

_____          _____
Date                                                Its:

Motion was made by Commissioner Steve Ammons and seconded by Commissioner Sheila Tyson that the Contract w/Resolution be Approved.  **AYES:** Knight, Stephens, Ammons, Tyson, Scales;

Closing comments were heard from each Commissioner.

Thereupon the Commission Meeting was recessed at 10:11 AM

_____

The Commission Meeting was scheduled to re-convene in regular session on Thursday,  November 18, 2021, at 9:00 AM.

_____
                                                     James A. Stephens, President
                                                     Jefferson County Commission

ATTEST:

_____
Millie Diliberto, Minute Clerk
Jefferson County Commission