IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CARA MCCLURE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. |
| v. | ) | 2:23-cv-00443-MMH |
| | ) | |
| JEFFERSON COUNTY COMMISSION, | ) | |
| | ) | |
| Defendant, | ) | |
| | | |
| ALEXIA ADDOH-KONDI, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. |
| v. | ) | 2:23-cv-00503-MMH |
| | ) | |
| JEFFERSON COUNTY COMMISSION, | ) | |
| | ) | |
| Defendant. | ) | |

**ADDOH-KONDI PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO STAY INJUNCTION PENDING APPEAL**

Defendant Jefferson County Commission has filed a motion for stay of this Court's September 16, 2025, injunction prohibiting future use of the Commission's 2021 redistricting plan that appears to have been prepared prior to the Court's Order. It repeats the Commission's old arguments without attempting to respond to the

carefully crafted reasons this Court now has now twice provided for rejecting them. And it cites no precedent for its argument that it is too late to provide relief from unconstitutional racial gerrymandering for an election that is fourteen months away. The Commission completely fails to carry the heavy burden required to justify a stay and the Court should accordingly deny its request to stay the Court's Order.

## I.    ARGUMENT

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Singleton v. Allen*, 691 F.Supp.3d 1343, 1348 (N.D. Ala. 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009); accord, e.g., *Schultz v. Alabama*, 2018 WL 9786086 *3 (N.D. Ala., Nov. 8, 2018) (Haikala, J.).

The factors governing a stay pending appeal are well established: "(1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits, (2) whether the applicant will be irreparably injured absent a stay, (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest lies." *Georgia Muslim Voter Project v. Kemp*, 918 F.3d 1262, 1267 (11th Cir. 2019) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

"The first two factors are the most critical. As to the first factor, it is not enough that the chance of success on the merits be better than negligible." *Nken*, 556 U.S. at 434 (cleaned up).

These traditional stay factors are controlling even when the petitioner invokes *Purcell v. Gonzalez*, 549 U.S. 1 (2006). *Rose v. Raffensperger*, 143 S.Ct. 58 (2022) ("the Eleventh Circuit failed to analyze the motion under that [*Nken*] framework. Instead, it applied a version of the *Purcell* principle that respondent could not fairly have advanced himself in light of his previous representations to the district court that the schedule on which the district court proceeded was sufficient to enable effectual relief as to the November elections should applicants win at trial.").

A.   **The Commission is not likely to succeed on the merits**.

The Commission's motion reprises its labored contention that the 65% threshold set out in its prior requests for Section 5 VRA preclearance merely reported "demographics" and did not constitute a racial target. Doc. 134 at 4-5.[1] The Commission does not respond to this Court's finding that "In each [submission], the Commission redistricted to achieve ideal population across all districts and to maintain two Black majority districts with the Black population in each constituting

---

[1] For this Court's convenience, record references in this response are to *McClure* docket numbers.

3

more than 65% of the total population," Doc. 191 at 106, and its conclusion that "the Commission's Section 5 preclearance letters to the DOJ between 1985 and 2013 are direct evidence of the Commission's intent in 1985, 1993, 2001, 2004, and 2013. As this discussion of the preclearance letters demonstrates, the letters are powerful circumstantial evidence of the continuation of a pattern of using race to set the boundaries of the Commission's districts in 2021." Doc. 191 at 104. The Commission's motion for stay does not contend this Court's fact findings are clearly erroneous, Rule 52a.(6), Fed.R.Civ.P., or that it misapplied the correct legal standards.

The Commission's motion revisits its arguments that the race-related statements of Commissioners Scales and Tyson are not evidence of a predominant racial purpose. Doc. 194 at 6-7. Nowhere does it address this Court's detailed discussion of this evidence, Doc. 191 at 77-82, or its conclusion that "[r]emarks made by Commissioner Scales and by Commissioner Tyson underscore the predominant role of race during the 2021 redistricting cycle." Id. at 120. The Commission's motion for stay does not contend this Court's fact findings are clearly erroneous, Rule 52a.(6), Fed.R.Civ.P., or that it misapplied the correct legal standards.

The Commission's motion returns to its original defense in this action, the

contention that core retention is a legally sufficient non-racial justification for the 2021 plan. Doc. 194 at 7-8. The Commission relies on its own reading of *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1 (2024), and *Abbott v. Perez*, 585 U.S. 579 (2018). But nowhere does it respond to this Court's explanation of why those cases support the opposite conclusion:

> For example, the Court's observation that "'Direct evidence often comes in the form of a relevant state actor's express acknowledgement that race played a role in the drawing of district lines.' *Alexander*, 602 U.S. at 8. 'Such concessions are not uncommon because States often admit to considering race for the purpose of satisfying [] precedent interpreting the Voting Rights Act of 1965. *Alexander*, 602 U.S. at 8 (citing *Ala. Legis. Black Caucus*, 575 U.S. [254,] 259–60 [(2015)]). 'In such instances, if the State cannot satisfy strict scrutiny, direct evidence of this sort amounts to a confession of error.' *Alexander*, 602 U.S. at 8." Doc. 191 at 91.

> And this Court's explanation that "In examining the Commission's predominant purpose in adopting new district boundaries in 2021, the intent of earlier Commissions is relevant to the extent that it 'naturally give[s] rise to – or tend[s] to refute – inferences' regarding the predominant purpose of the Commission in 2021. *Abbott*, 585 U.S. at 607. Evidence from earlier redistricting cycles may illumine whether the Commission 'reenact[ed] the plan previously passed by its

201[3] predecessor' and 'carried forward the effects of any discriminatory intent on the part of the' 2013 Commission in the 2021 plan. *Abbott*, 585 U.S. at 604." Doc. 191 at 96. Accord, *Jacksonville Branch of NAACP v. City of Jacksonville*, 2022 WL 16754389 *3 (11th Cir., Nov. 7, 2022).

The Commission's motion also renews its argument that "anchoring Districts 1 and 2 in Birmingham" is a non-racial explanation. Doc. 194 at 9. Nowhere does it contend that this Court's findings of fact, such as the following, are clearly erroneous or apply an incorrect legal standard:

> • "Contrary to the Commission's position, the Commission's 1985 preclearance submission shows that the geographic centering of District 1 and 2 around Birmingham represents the effect of its decision to draw district lines based on race. To achieve 65% Black districts, the Commission had to create majority-Black districts where the county's Black population lived. The Commission's initial anchoring of Districts 1 and 2 in Birmingham and its expansion of those districts in thin, awkward juts and protrusions through a series of municipal splits evinces this same intent in subsequent redistricting cycles." Doc. 191 at 109.
>
> • "The Commission achieved its goal of maintaining a supermajority Black District 1 by tracking Black population growth beyond the corporate boundaries of the City of Birmingham." *Id.* at 111.
>
> • "To follow the movement of Black citizens from the City of Birmingham and place those citizens in Districts 1 and 2, the Commission departed from traditional redistricting criteria." *Id.* at 118.

Because the Commission has not carried its burden of demonstrating the

likelihood of success on appeal, its motion for a stay should be denied. E.g., *Jacksonville Branch of NAACP v. City of Jacksonville*, 2023 WL 119425 *3 (11th Cir., Jan. 6, 2023); *Jacksonville Branch of NAACP v. City of Jacksonville*, 2022 WL 16754389 (11th Cir., Nov. 7, 2022); *Georgia Republican Party, Inc. v. Secretary of State for Georgia*, 2020 WL 7488181 (11th Cir., Dec. 21, 2020); *Georgia Muslim Voter Project v. Kemp*, 918 F.3d 1262, 1269 (11th Cir. 2019); *Democratic Executive Committee of Florida v. Lee*, 915 F.3d 1312, 1318 (11th Cir. 2019).

**B.     The balance of equities favors Jefferson County voters and the public interest.**

The Commission's motion contends it will be irreparably harmed unless a stay is granted, claiming that "here, the 'inability' to conduct elections under a 'duly enacted' redistricting plan 'clearly inflicts irreparable harm' on the Commission and the public it represents." Doc. 194 at 11 (citing *Abbott*, 585 U.S. at 602; accord *Trump v. CASA, Inc*., 606 U.S. 831, 860-61 (2025)). But the *Abbott* citation makes an exception for statutes that are unconstitutional, as the Eleventh Circuit has recognized: "Appellants will not suffer irreparable harm absent a stay. Given that the district court found the Enacted Plan is substantially likely to be unconstitutional, we do not see how Appellants would be irreparably harmed by using a different map." *Jacksonville Branch of NAACP v. City of Jacksonville*, 2022 WL 16754389 at *4 ("Numerous cases have described the immense harm caused by racial

gerrymandering. Given that such gerrymandering would constitute irreparable harm to the Appellees, and the public has no interest in enforcing unconstitutional redistricting plans, we decline to require the residents of Jacksonville to live for the next four years in districts defined by a map that is substantially likely to be unconstitutional.") (citing *Bethune-Hill v. Va. State Bd. Of Elections*, 137 S. Ct. 788, 797 (2017); *Miller v. Johnson*, 515 U.S. 900, 911–12 (1995); *Shaw v. Reno*, 509 U.S. 630, 643 (1993)).

That is the case here, where this Court has determined after a trial on the merits that the enacted 2021 Commission plan unconstitutionally segregates voters by race. It is Jefferson County's citizens and the public interest who will be irreparably harmed if a stay is granted and the 2026 elections are allowed to proceed with racially segregated, unconstitutional districts.

The Commission's motion complains that the statutory one-year residency requirement could require "paired commissioners" to move if the remedial districts are not in place by November 3, 2025, and that election officials will need time to inspect and correct deviations between census VTDs and precinct lines. Doc. 194 at 13. But such "inconveniences" do not qualify as irreparable harm. *Jacksonville Branch of NAACP,* 2022 WL 16754389 at *4.

### C. There is more than enough time to implement constitutional districts.

Even though the 2026 general election will be November 3, 2026, the primary election will be May 19, 2026, and the candidate qualifying deadline is January 23, 2026, the Commission says it is too late now for it to adopt and for this Court to approve a remedial plan. Doc. 194 at 13-15. But, as Plaintiffs have shown, that argument contradicts the Commission's previous representations in these cases. See McClure Plaintiffs' Notice Regarding Upcoming Election Deadlines, Doc. 189.

The Commission's motion cites no case invoking the *Purcell* principle this far ahead of scheduled elections. *See Merrill v. Milligan*, 142 S.Ct. 879 (Mem) (2022) ("the primary elections begin (via absentee voting) just seven weeks from now"); *Democratic National Committee v. Wisconsin State Legislature*, 141 S.Ct. 28 (Mem) (2020) ("just six weeks before the November election and after absentee voting had already begun"); *Republican National Committee v. Democratic National Committee*, 589 U.S. 423, 424 (2020) (five days before election); *Grace, Inc. v. City of Miami*, 2023 WL 5286232 *1-*2 (11th Cir., Aug. 4, 2023), motion to vacate stay denied, 144 S.Ct. 45 (2023) ("little more than three months before City of Miami voters go to the polls").

The circumstances here are more like those in *Jacksonville Branch of NAACP*, where "the district court issued its injunction three months prior to the candidate

9

qualifying period and five months prior to the elections for a single county. Applying *Purcell* to this case would extend the 'eve of an election' farther than we have before." 2022 WL 16754389 at *2.

## II.  CONCLUSION

The Commission is wrong when it says "Plaintiffs seek to rebalance the racial demographics of districts," moving Black voters from Districts 1 and 2 to Districts 3 and 4. Doc. 194 at 10. The Addoh-Kondi Plaintiffs have contended throughout this litigation that the focus should be on restoring municipal integrity, not on race. This Court agreed "that, in deciding to split municipalities in the 2021 plan, the commissioners did so predominantly because of race." Doc. 191 at 118 (citing *Alexander*, 602 U.S. at 7). The remedial plan should restore municipal boundaries and let racial demographics take care of themselves, subject only to clear evidence that the resulting districts violate statutory or constitutional prohibitions of racial vote dilution.

The Commission's motion for a stay pending appeal should be denied.

Respectfully submitted,

/s/ *James Uriah Blacksher*
James U. Blacksher
825 Linwood Road
Birmingham, AL 35222
Tel. (205) 612-3752

Fax. (205) 845-4395

/s/ *Richard P. Rouco*
Richard Rouco
Quinn Connor Weaver
Davies & Rouco, LLP
2 - 20th Street North Ste. 930
Birmingham, AL 35203
Tel. (205) 870-9989
rrouco@qcwdr.com

/s/ *U. W. Clemon*
U. W. Clemon
2001 Park Place
10th Floor
Birmingham, AL 35203
Tel. (205) 506-4524
uwclemon1@gmail.com

/s/ *Richard Rice*
Richard Rice
The Rice Firm, LLC
115 Richard Arrington Jr. Blvd. N.
Birmingham AL 35203
Tel. (205) 618-8733 ext. 101
rrice@rice-lawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2025, a true and correct copy of the foregoing was served on all counsel of record through the Court's CM/ECF filing system.

/s/ *Richard P. Rouco*
Richard Rouco